## ROBERT ALLEN v. STATE.

No. A-2483.  Opinion Filed May 19, 1917.

(164 Pac. 1002.)

1.  **TRIAL—Remarks of County Attorney.** Remarks of the county attorney in his argument will be considered and construed in reference to the evidence, and in order to constitute reversible error the impropriety indulged in must have been such as may have improperly influenced the verdict.

2.  **APPEAL—New Trial—Fundamental Error.** Where the guilt of the appellant is clearly and conclusively established, and there is no good reason to believe that upon a second trial an intelligent and honest jury could, or would, with reason and propriety arrive at any other verdict than that of guilt, a new trial will not be granted except for fundamental error.

3.    **TRIAL—Misconduct of Jury—Use of Intoxicants.** The use of small quantities of whiskey or other intoxicants mixed with curative drugs, or diluted and used strictly for medicinal purposes, by jurors when not deliberating upon the verdict, is not such misconduct as will vitiate the verdict and authorize the granting of a new trial, where it appears that such jurors were in no way incapacitated thereby for the proper performance of their duties. **Bilton v. Terr.,** 1 Okla. Cr. 566, 99 Pac. 163, distinguished.

4.    **TRIAL—Misconduct of Jury—Statute.** Record examined as to other alleged misconduct of jury, and **held** not reversible error in this case.

*Error from Superior Court, Oklahoma County;*
*Edward Dewes Oldfield, Judge.*

Robert Allen was convicted of murder and sentenced to imprisonment for life, and he brings error. Affirmed.

*Pruiett, Sniggs & Tripp,* for plaintiff in error.

S. P. *Freeling,* Atty. Gen., and R. *McMillan,* Asst. Atty. Gen., for the State.

MATSON, J. A statement of facts will not be necessary for a determination of the questions presented in this appeal, except to state that the evidence upon the part of the state shows a willful, premeditated and intentional killing without any justifiable or excusable cause, while the defendant claimed either that he was too drunk to know what he was doing, or else killed the deceased in self-defense. The defendant's testimony is conflicting as to which theory of defense he relied upon. The theory of temporary insanity as well as self-defense was covered by the court's instructions. The sole errors relied upon relate entirely to alleged improper argument on the part of the assistant county attorney and improper conduct of the jury while impaneled and considering the evidence in the case. The first alleged error relied upon for a reversal is the improper conduct and argument of

the assistant county attorney. The excerpts from said argument contained in the brief of plaintiff in error which are claimed to be improper and prejudicial to this appellant are as follows:

First. "You took the life of a man who was there defenseless. You know it, Allen. You were there. You know it."

This remark was objected to by counsel for the appellant, and that part of the argument "You know it, Allen," was by the court promptly stricken, and the jury admonished not to consider it.

Second. "If you went home to your wife and little children and told them what you had heard from the witnesses, what would their conscience tell them?"

Counsel for appellant made the following objection to this line of argument:

"Note our exceptions to that argument as not legitimate and not germane to the case."

Third. "No, you would not say that child's conscience told it wrong. Don't go home and have a child tell you those things."

To the foregoing statement the following objection was interposed by counsel for appellant:

"We object to this kind of argument as being made for the purpose of arousing prejudice only."

Fourth. "Go home and look your dear wife in the face. When you speak to her and she says, 'John, what did you do in the face of that testimony?' You do not have any doubt of his guilt."

To the foregoing counsel for appellant objected as follows:

"We object as not germane or legitimate argument, not relevant and note our exceptions."

Fifth. "Let's go beyond the personalities in this case and get down to the real issues. There is no politics in this case. Pruiett took it out when he discovered a man with a John Fields button on."

To the foregoing remark counsel for the appellant excepted as follows:

"Note our exceptions to that argument."

After which the county attorney continued as follows:

"I don't care for your exceptions. Who brought that into this case? Not a man on the jury will say that I brought it in here. Where does it cut any figure anyway? Be courageous, men."

Whereupon counsel again excepted as follows:

"Note our exceptions to the argument of counsel as being highly improper."

"By the Court: Just a minute, Mr. Choate, gentlemen of the jury, these arguments of counsel both for the state and the defendant in regard to politics having entered into this case; the court fails to see where any politics has entered, and fails to see where it is relevant or should be commented upon by counsel for the state or the defendant either one. You will therefore disregard all statements of counsel in regard to politics having entered into the case, the same being impertinent and not properly before you."

The foregoing excerpts from the brief of counsel for the appellant and the record itself contain all the statements of the assistant county attorney alleged to be improper, and the rulings of the trial court thereon. It will be noted that although there was no request on the part of counsel for the appellant that the court withdraw any of this argument from the consideration of the jury

the court of its own motion, however, did withdraw certain portions of this argument from the jury and instructed the jury not to consider it. The assistant county attorney engaged in a line of argument which is not to be commended, and we agree with counsel for the appellant that the argument made had a tendency to appeal to the passion and prejudice of the individual members of the jury. However, it is not such argument as the making of it is a ground for a new trial under the statutes of this state. In our opinion, this argument could have been cured by its withdrawal from the consideration of the jury by the trial court, and counsel for the appellant should have requested its withdrawal in order that the court might have cured the error, if any. This was not done. Counsel at the time only saw fit to object and take an exception without any ruling by the trial court upon the impropriety of certain of these remarks. Others the trial court, of its own motion, as heretofore indicated, saw fit to withdraw and admonish the jury not to consider. It is not every species of improper argument that justifies this court in reversing a judgment of conviction. The argument may be improper, but the proof of guilt may also be so overwhelming that it is evident that upon a second trial an impartial and intelligent jury could arrive at no honest conclusion except that of guilt. That is the situation in this case. The proof upon the part of the state when considered in connection with the evidence of the defendant is so convincing and conclusive that it is readily to be seen that a verdict of guilty of murder was the only logical conclusion that an intelligent jury could have arrived at in this case. It would be an imposition upon the law-abiding citizens of this state and an unjust burden upon the taxpaying public.

to reverse this judgment because of these alleged errors in the argument where no request was made to have the trial court withdraw the remarks from the consideration of the jury. It is not the rule in Oklahoma that error presumes injury, but this court is required to examine the entire record carefully and determine from all the facts and circumstances surrounding the case (where the error is not fundamental—*i. e.*, such as involves the violation of some express constitutional or statutory right of the defendant) whether the error complained of has probably resulted in a miscarriage of justice. This cannot be said to be true in this instance, because of the conclusive proof of the guilt of this appellant.

We hold, therefore, that where the guilt of the appellant is clearly established, and there is no good reason to beieve that upon a second trial an intelligent and honest jury could or would with reason and propriety arrive at any other verdict than that of guilt, a new trial will not be granted except for fundamental error.

It is also contended that the jury, while considering the evidence in the case, drank whisky. The evidence in support of this alleged ground for a new trial is substantially as follows: It appears that after the jury was impaneled and while the evidence was being introduced the court took a recess over Thanksgiving Day, and on said day the jury was kept together, in charge of a sworn bailiff, a part of the time being located in a room at a hotel in Oklahoma City. One of the jurors was sick, and on the recommendation of his physician was told to take a little quinine and whisky. In some manner, not disclosed by the record, this juror procured a half pint of wh`sky, and mixed the quinine with it, and during

Thanksgiving Day, while the jury was not considering the evidence, this juror drank the greater part of such mixture. It appears also that another juror drank two drinks of this mixture on that day. On the next morning before going to the trial this sick juror took one drink of the whisky and quinine.

The foregoing is the misconduct complained of. Counsel for appellant rely largely upon the decision of this court in the case of *Bilton v. Territory,* 1 Okla. Cr. 566, 99 Pac. 163, in which it was held:

"The use of intoxicating liquor as a beverage by a juror during the trial and consideration of a capital case will vitiate a verdict of guilty, and entitle the accused to a new trial."

It will be noted that in that case the intoxicating liquor was used as a beverage, while in this case it was prescribed as a medicine and used upon the advice of a physician. In the Bilton Case the whisky was drunk at a time when the jury was considering the evidence. In this case the whisky and quinine was taken at a time when the jury was not considering the evidence, but during a recess occasioned by the happening of Thanksgiving Day. It also appears from the Bilton Case that the decisions upon which that holding of this court rests are based upon the use of intoxicants after the jury had retired to consider of its verdict. The drinking of whisky or any other intoxicating beverage by the jury or by any member thereof should not be tolerated, and the bailiff in charge of a jury should be very careful to guard against the reception and use of such intoxicants by the jury.

The Bilton Case, we think, is distinguishable from this case. First, in that in the Bilton Case the jury used

whisky as a beverage and drank considerable quantities of it throughout the progress of the trial, while in this case only two members of the jury partook of whisky mixed with quinine as a medicine, and that during a recess in the trial, and it is not shown that the effect of such mixture deadened the sensibilities of the jurors to any extent whatever, or rendered either of them incapable of the proper performance of their duties. Further, it is not contended in this case that after the jury retired to consider of their verdict any intoxicants were consumed by any member thereof. In the Bilton Case it was shown that certain members of the jury drank whisky at a saloon "while hearing this case and deliberating upon their verdict." So that it may be readily seen that the facts in the Bilton Case are very dissimilar to the facts in this case.

The Supreme Court of Iowa, in the case of *State v. Morphy*, 33 Iowa, 273, 11 Am. Rep. 122, distinguishes in fact and principle the case of *State v. Baldy*, 17 Iowa, 39 (cited with approval in the Bilton Case), as follows:

"It is next assigned as error that the court refused to set aside the verdict of the jury on the ground that one of the jurors drank intoxicating liquor during the progress of the trial. The affidavits as to the fact that the juror did so drink are not set out in full in the abstract. So far as we are able to determine the circumstances upon the abstract and arguments they are, that one of the jurors, not in the habit of drinking, was ill during the trial, and took for medicinal purposes, without medical advice or prescription, some brandy and blackberry balsam or mixture; that it was done during the hearing of the case and not after the jury retired. There is no showing or claim that its effects were intoxicating or other than remedial; nor is it shown that the facts concernng it were not well known to defendant

and his counsel at the time and before the cause was submitted to the jury. The case is not, either in its facts or principles, within *State v. Baldy,* 17 Iowa, 39, nor *Ryan v. Harrow,* 27 Iowa, 494 [1 Am. Rep. 302], and there was no error in the action of the court in this respect."

The facts in the Morphy Case are very similar, to the facts in this case. In the case of *Gilmanton v. Ham,* 38 N. H. 114, the use of a small quantity of brandy by a juror for medicinal purposes is held not to be error where his disease is real and manifest, and the use of brandy had been previously prescribed by a physician. This later case distinguishes the principle previously announced by that court in the cases of *State v. Bullard,* 16 N. H. 139, and *Leighton v. Sargent,* 31 N. H. 119, 64 Am. Dec. 323 (cited with approval in the Bilton Case), although the former decisions were not mentioned. In *Gilmanton v. Ham, supra,* the court said:

"We see no sufficient cause for setting aside the verdict, in the conduct of the juror in drinking a small quantity of brandy, which, upon the evidence before us, he must be holden to have taken only and strictly as a medicine, previously prescribed by his physician, as a remedy for the disease under which he was manifestly laboring at the time, and not as a beverage. It was taken by him alone, apart from and without the knowledge of any of his fellows, in good faith, as a remedial agent for a serious and troublesome malady. The facts found by the case do not seem to us to differ substantially in effect from what they would have been if the juror had carried in his pocket a vial of medicine for the relief of the difficulty under which he was suffering, and had taken a dose of it on one of the numerous occasions when he was obliged, as the consequence of his illness, to leave the juryroom. His disease was real and manifest, and not feigned; the juror was not in the habit of using spiritu-

ous liquors; he requested the officer to obtain the small quantity of brandy for him, as the medicine prescribed by his physician for the disease under which he was palpably suffering; he drank it privately as a medicine, and not as a beverage, after his mind was made up in the case; and it is impossible to conceive how, under the circumstances, the defendant can have suffered from the influence of the liquor upon the judgment of the juror, or what injurious influence can be exerted on the community as the result of such an occurrence. There would not seem to have been anything in the conduct of the juror, as disclosed by the case, which can rightfully be regarded as imprudent or injudicious, much less deserving the severe reprehension and rebuke which would be involved in setting aside the verdict on that account."

A similar distinction is made in the case of *Pope v. State,* 36 Miss. 121, wherein it was held:

"The introduction by the bailiff of intoxicating liquors, in a sufficient quantity to produce drunkenness, into the room where the jury in a felony case are deliberating upon their verdict, is illegal and improper; and if nothing more appear, the verdict will be set aside upon the ground that the jury were thereby exposed to an improper influence; but if it appear that such liquor was used by only one of the jury, who was sick, and that he was not intoxicated thereby, the presumption which would otherwise arise against the purity of the verdict is rebutted, and it will not be disturbed."

Other cases to like effect are *State v. Cucuel,* 31 N. J. Law, 249, and *People v. Romero,* 12 Cal. App. 466, 107 Pac. 709.

While there appears to be a direct conflict in the authorities as to whether or not the use of intoxicating liquors as a beverage by members of the jury during the progress of the trial and while deliberating upon the

verdict is of itself sufficient ground for granting a new trial, there appears to be a uniformity of modern opinion to the effect that the use of small quantities of whisky or other intoxicants mixed with curative drugs, or diluted, and used strictly for medicinal purposes by jurors is not such misconduct as will vitiate the verdict and authorize the granting of a new trial, where it appears that such jurors were in no way rendered intoxicated or incapacitated for the proper performance of their duties. There is an affirmative showing in this case that neither of the jurors who partook of whisky and quinine was in any way incapacitated thereby.

Finally it is contended that other misconduct of the jury should reverse this judgment. This assignment of error refers to the fact that during recesses taken during the progress of the trial the jurors were permitted to have access to certain local newspapers concerning statements of other homicides committed in Oklahoma county while the trial of this case was in progress, and also during a recess some of the jury saw the sheriff come into the courthouse carrying a hat and two butcher knives, and one of the jurors spoke to him and asked him if that was all he got, and he replied, "No, I got one dead one and five live ones." It is asserted that this conduct was such as to greatly prejudice this defendant and deprive him of a fair and impartial trial. While the conduct of the juror in yelling to the sheriff as he was passing through the courthouse is subject to criticism, and is such as the trial court should always rebuke should attention be called to it, nevertheless we cannot see wherein this defendant's substantial rights were prejudiced thereby. Our statutes (sections 5899, 5900, and 5937, Rev. Laws 1910), provide that there shall be no communication with

the jury after it has been impaneled and sworn to try the case by any person on any subject connected with the trial itself, and if such a communication is had it is ground for new trial, and the verdict should be set aside. In this case it is shown conclusively that no person was permitted to communicate with the jury upon any subject connected with the trial, and it is also shown that the newspapers which the jurors were permitted to read contained no statement with reference to this particular trial; that such matters were torn or cut out of the papers before they were handed to the jurors. No statutory right of this defendant therefore was violated, the jury did not discuss these outside matters in any way, and it does not appear that the defendant was probably injured by such alleged misconduct; but on the other hand the testimony of the persons called by the defendant in support of the motion for new trial, in our opinion, shows that no injury was occasioned this defendant by any of these matters set forth in the motion.

Where the evidence is so conclusive and convincing of the guilt of the defendant of the degree of crime of which the jury found him guilty, before this court may set such a judgment of conviction aside it must clearly appear that the defendant has been deprived of some constitutional or statutory right, or that the errors complained of have probably resulted in a miscarriage of justice. In this case, it is our firm conviction, not only that there has been no miscarriage of justice and the defendant has been deprived of none of his constitutional or statutory rights, but also that the conviction of murder received at the hands of the jury was the only honest verdict which an intelligent and unbiased jury could have found under the evidence.

For the reasons given, the judgment of the superior court of Oklahoma county is affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.