## DURLING S. CRADDOCK v. STATE.

No. A-2662.　Opinion Filed September 15, 1917.

(167 Pac. 331.)

**TRIAL—Verdict—Impeachment by Jurors.** Jurors will not be permitted to impeach or contradict their verdict by affidavits or otherwise after they have been discharged from the jury and have mingled with the public.

*Appeal from District Court, Oklahoma County;*
*John W. Hayson, Judge.*

Durling S. Craddock was convicted of manslaughter in the first degree, and he appeals. Affirmed.

*Chas. H. Ruth,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

MATSON, J. This is an appeal from the district court of Oklahoma county wherein the plaintiff in error was convicted of the crime of manslaughter in the first degree and his punishment fixed at the minimum of four years' imprisonment in the state penitentiary. There is but one assignment of error relied upon for a reversal of this judgment, viz.:

"Misconduct of the jury, in that the verdict was decided by lot and other means and is not a fair expression of the opinion on the part of the jury and each member thereof, in this, that before the verdict was arrived at and as a consideration thereof, and as a condition precedent for a verdict of guilty with four years' imprisonment, the jury unanimously signed a writing and caused same to be delivered to the court, which in substance provides for a recommendation to the Governor of the state to remit or commute the four years' to one year's imprison-

ment; and had it not been for the agreement and recommendation the jury would not have agreed upon a verdict of guilty."

This alleged error was presented to the trial court in the motion for a new trial, supported by the affidavit of the juror H. E. Robinson, which said affidavit is as follows:

"H. E. Robinson, of lawful age, on oath and being first duly sworn, deposes and says that he was a member of the jury which tried the case above entitled and rendered a verdict therein on June 14, 1915; that at least three members of said jury were constantly holding out for a verdict of not guilty, and their consent to a four-year verdict and of guilty of manslaughter was obtained in the following way: That before said verdict was agreed to and signed, it was agreed by the jury as a condition precedent to the said verdict that all 12 members of the jury would sign a written recommendation to the Governor of the State of Oklahoma to reduce the four-year sentence to one prison year; that this recommendation was signed by all the jury before the verdict was announced to the bailiff to be announced to the court; that the said three jurymen would not have, under any circumstances, consented to any verdict of guilty had it not been for the agreement of all the jury to sign said recommendation, and had it not been that they believed in good faith that such a recommendation was proper and would to a moral certainty be complied with; that the said written paper to the Governor was filed by three members of the jury with the Hon. John W. Hayson soon after the jury was discharged, who was district judge who tried the case; that had it not been for this method of arriving at a verdict and the said recommendation, the said jurymen would have voted not guilty until a verdict of not guilty was had or a mistrial was declared.

"H. E. ROBINSON.

"Subscribed and sworn to before me this 20th day of July, 1915."

This is not a question of first impression with this court. The question of whether jurors may impeach or contradict their verdict after they have been discharged and have mingled with the public was passed upon in the case of *Petitti v. State,* 2 Okla. Cr. 131, 100 Pac. 1122, wherein it was held:

"When the jury have returned into court a verdict finding the defendant not guilty, it is error, after the jury have been discharged and mingled with the public, for the court to recall the members of the jury and require or permit them to impeach the verdict returned into court by testifying that they really intended to find the defendant guilty."

The question was next passed upon in the case of *Spencer v. State,* 5 Okla. Cr. page 7, 113 Pac. page 224, where the Petitti Case was followed. In the Spencer Case this court said:

"If, after being discharged and mingling with the public, jurors are permitted to impeach verdicts which they have rendered, judgments based upon verdicts of juries would rest upon a very uncertain foundation. Litigants against whom verdicts had been rendered would be continually importuning jurors and attempting to obtain from them affidavits upon which such verdicts could be assailed. This would result in perjury and bribery. There would be no end of litigation in cases tried before juries. Therefore, for the security of litigants, and to prevent fraud and perjury, as well as for the protection of the jurors themselves, courts will not allow jurors to impeach their own verdict unless they are permitted to do so by the express provisions of the statute. We have no statute permitting this to be done."

And again in the case of *Vanderburg v. State,* 6 Okla. Cr. 485, 120 Pac. 301, where the question was again pre-

sented, the Spencer and Petitti Cases were followed. In the Vanderburg Case it was said:

"In support of a motion for a new trial the testimony of one of the jurors was taken, wherein he testified in substance that the verdict of the jury was not unanimous, and that he did not vote for a conviction. Two other jurors were permitted to testify that the question of taxes was discussed, and that the costs would be thrown on the state, if they did not stick the defendant. It will be sufficient to say on this question that jurors will not be allowed to impeach their verdict by their affidavits or testimony after they have been discharged. *Spencer v. State,* 5 Okla. Cr. 7, 113 Pac. 224."

Also in the case of *Overton v. State,* 7 Okla. Cr. 203, 114 Pac. 1132, .123 Pac. .175, this court again held that jurors would not be permitted to impeach their verdicts by affidavits or testimony to the effect that they were influenced by something in arriving at a verdict other than the law and the testimony.

And in the case of *Keith v. State,* 7 Okla. Cr. 156, 123 Pac. 172, the sole question presented was whether or not a verdict could be impeached by the affidavits or testimony of jurors showing misconduct on their part in arriving at the verdict. It was again held that a verdict could not be so impeached. In the Keith Case all the decisions of this court, together with the decisions of the courts of numerous other states, were cited and quoted from, the court distinguishing between the statutes of those states which permit a verdict to be impeached in this manner and the law governing in Oklahoma. In the Keith Case this court said:

"As was well said by Chief Justice Mansfield, if a verdict can be impeached by the affidavit or testimony of a juror, then in any criminal case tried in the state, no

matter how conclusive the testimony and how regular the trial may have been in other respects, it will be in the power of one juror to secure a reversal of a conviction, and at the same time do it in such a manner as to conceal the purpose for which it was done, and thereby exempt himself from punishment. Such a juror could insist that the amount of punishment should be arrived at by lot, or he could make statements to the other jurors highly damaging to the defendant; then afterwards it would not be necessary for him to file an affidavit as to how the verdict was reached in the case, for, if the right to impeach a verdict by affidavit of a juror exists, the right to have the entire jury summoned and placed on the stand and examined as to what occurred in the jury room also exists; and when a verdict was rendered, as above indicated, such juror might have been the most zealous for conviction, when, as a matter of fact, he was working solely in the interests of the defendant. If this can be done, it places in the hands of a defendant the power to set aside any verdict that might be rendered against him, provided only he can find a juror who will be willing to carry out the program. It may be stated that this is an extreme illustration; but it must be remembered that the extreme case is the test of the rule. We might fill a volume by quoting from authorities supporting our views on this question; but, as it has been decided three times by this court, we do not deem it necessary to quote further from authorities."

Numerous authorities are collated in the Keith Case, and we deem it unnecessary to embody them in this opinion.

See, also, *Star v. State*, 9 Okla. Cr. 210, 131 Pac. 542.

It has been clearly established in this state that a juror will not be permitted to impeach his verdict, after he has been discharged and has mingled with the public, either by affidavit or oral testimony.

We have read the testimony in this case, and conclude that the defendant is to be congratulated upon receiving the minimum punishment for manslaughter in the first degree. Under the state's evidence he is clearly guilty of murder, and the testimony of his own witnesses does not tend to reduce this offense to manslaughter. There is slight evidence of self-defense, but the jury undoubtedly were led to lighten the punishment because of an alleged assault by the deceased upon the wife of the defendant the day previous to the homicide. Defendant. did not take the witness stand in his own behalf. What was really the actuating cause of this killing, therefore, has never been told by him. After an examination of the entire record, however, we are convinced that he has been dealt with most leniently.

The judgment of the district court of Oklahoma county is therefore affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.