## HUNTER LEE REVIS v. STATE.

No. A-6456.　Opinion Filed March 9, 1929.
(275 Pac. 351.)

Morris & Tant, for plaintiff in error.

Edwin Dabney, Atty. Gen., and J. H. Lawson, Asst. Atty. Gen., for the State.

CHAPPELL, J.　The plaintiff in error, hereinafter called defendant, was tried in the district court of Oklahoma county, and by a jury found guilty of manslaugh-

ter in the first degree and sentenced to serve a term of four years in the state penitentiary at McAlester. Motion for new trial was filed, considered by the court, and overruled. The defendant has appealed to this court. The information properly charged the defendant, Hunter Lee Revis, alias George Revis, with murder.

The defendant sets out numerous grounds of error, but argues and cites authorities to support only the fourth and fifth grounds of error.

The fourth ground of error is as follows:

"Improper conduct on the part of the jury in arriving at a verdict in this, to wit: That while the jury was in their jury-room and while considering their verdict and before part of the jury would consent to return the verdict herein the said jury while in their jury-room prepared a certain written instrument in the nature of an agreement and recommendation to the Governor of the State of Oklahoma, recommending executive clemency for said defendant, which said statement was delivered by said jury in a body to the attorneys for said defendant. The original statement is attached hereto, marked Exhibit A, and made a part of this motion that said statement was signed by said jury while in their jury-room, and while considering their verdict, and on account and because of which the said verdict was reached."

Defendant's fifth ground of error is as follows:

"Misconduct of the jury in arriving at their verdict in that while said jury was considering their verdict and while in their jury-room certain members of the jury discussed the character and reputation of the defendant and the defendant's wife who was a witness in said cause which character and reputation of said defendant and defendant's wife not having been placed in issue during the trial of said case."

Since both of these grounds allege misconduct of the jury, they will be considered together by the court

as amounting to only one ground of error; that is "That the court erred in overruling defendant's motion for new trial on account of misconduct of the jury."

Under the stated facts testified to by the defendant himself in connection with the testimony of one A. A. McCarty, the defendant was guilty of murder, and under the statement made by the defendant alone, he was guilty of manslaughter. This court has repeatedly held that where the defendant in his testimony makes out a case against himself of manslaughter, and the jury has given him the lowest sentence under the law, this court will not reverse the case, regardless of the errors that may have occurred during the trial, except it be for errors that are fundamental, and without such errors conviction could not be had.

In the case of White v. State, 4 Okla. Cr. 143, 111 P. 1010, this court held:

"To reverse a conviction where a defendant is clearly guilty, upon a mere technical error of the trial court, which could not have injured the defendant, would be a prostitution of reason and an outrage upon justice and an act of treason to the law-abiding people of the state."

In the case of Maynes v. State, 6 Okla. Cr. 487, 119 P. 644, this court held:

"When the testimony of an accused on trial clearly shows his guilt, an erroneous instruction given by the court limiting the application of the law is not sufficient to justify a reversal of the judgment."

In the case of Allen v. State, 13 Okla. Cr. 395, 164 P. 1002, L. R. A. 1917F, 210, this court held:

"Where the guilt of the appellant is clearly and conclusively established, and there is no good reason to believe that upon a second trial an intelligent and honest jury could, or would, with reason and propriety arrive at any other verdict than that of guilt, a new trial

will not be granted except for fundamental error. * * * Where the evidence is so conclusive and convincing of the guilt of the defendant of the degree of crime of which the jury found him guilty, before this court may set such a judgment of conviction aside it must clearly appear that the defendant has been deprived of some constitutional or statutory right, or that the errors complained of have probably resulted in a miscarriage of justice."

In the case of Foreman v. State, 38 Okla. Cr. 50, 259 P. 176, Syl. 5, this court held:

"In a homicide case where the trial court erroneously admits a dying declaration without sufficient preliminary proof to render it competent, the admission of such dying declaration is harmless error, where the defendant is convicted of manslaughter in the first degree and the minimum punishment is assessed, and where his own testimony clearly shows him to be guilty of manslaughter in the first degree."

Considering now the other phase of the defendant's complaint, namely, misconduct of the jury in arriving at a verdict: This court has held in numerous cases that a jury is not permitted to impeach its own verdict by affidavit, deposition, or oral testimony.

In the case of Baumle v. Verde, 50 Okla. 610, 150 P. 876, this court held:

"Upon grounds of public policy, trial courts will not receive the affidavits, depositions, or oral testimony of jurors to impeach their verdict. * * * It appears from the record that in support of the motion for new trial, and to sustain this assignment, the plaintiff in error presented affidavits from a number of the jurors as to the method in which they arrived at the verdict, and a number of the members of the jury were called and examined before the court orally by counsel, and after considering the affidavits and the oral testimony of the jurors the court found that the verdict had not been arrived at by chance or by casting lot, and denied a new trial. This does not seem to be error. The method employed

by counsel to impeach the verdict in this instance has been expressly disapproved by the repeated decisions of this court, beginning with Colcord v. Conger, 10 Okla. 458, 62 P. 276, and extending to Glockner v. Jacobs, 40 Okla. 641, 140 P. 142. In Colcord v. Conger, supra, the court quotes from Thompson on Trials, sec. 2618, as follows: 'Upon grounds of public policy, courts have almost universally agreed upon the rule that no affidavit, deposition, or other sworn statement of a juror, will be received to impeach the verdict, to explain it, to show on what grounds it was rendered, or to show a mistake in it, or that they misunderstood the charge of the court, or that they otherwise agreed on their verdict by average or lot.' "

In the case of Hayes v. State, 35 Okla. Cr. 19, 247 P. 111 this court says:

"The verdict of a jury cannot be impeached by the affidavit or oral testimony of a juror. * * * The defendant sought to impeach the verdict by the affidavit and oral testimony of a juror to the effect that another juror knew two of the witnesses who testified in support of defendant's alibi, and that this juror stated, during the deliberations of the jury, that these witnesses were not entitled to credence. If any such statement was made or considered, the verdict could not be impeached in this manner. Keith v. State, 7 Okla. Cr. 156, 123 P. 172; Craddock v. State, 13 Okla. Cr. 724, 167 P. 331; Brantley v. State, 15 Okla. Cr. 6, 175 P. 51.

"In the Keith Case a quotation is found from an opinion written by Chief Justice Mansfield: 'As was well said by Chief Justice Mansfield, if a verdict can be impeached by the affidavit or testimony of a juror, then in any criminal case tried, * * * no matter how conclusive the testimony and how regular the trial may have been in other respects, it will be in the power of one juror to secure a reversal of a conviction, and at the same time do it in such a manner as to conceal the purpose for which it was done, and thereby exempt himself from punishment. * * * If this can be done, it places in the hands of a defendant the power to set aside any verdict that might be rendered against him, provided only he can find a

juror who will be willing to carry out the program.' "

In the case of Brantley v. State, 15 Okla. Cr. 6, 175 P. 51, in the syllabus this court says:

"Affidavits or oral testimony of jurors are inadmissible to impeach their verdict, and affidavits of the defendant, or any other person, of alleged misconduct of a juror, upon information derived from particular jurors, are inadmissible to impeach the verdict."

In the case of Overton v. State, 7 Okla. Cr. 203, 123 P. 175, in the body of an opinion by Presiding Judge Furman this court said:

"* * * The third and last proposition submitted in the motion for a rehearing is that misconduct occurring in the jury room while the jury was considering its verdict can be shown by the affidavits or testimony of the jurors. This is not the law in Oklahoma. See Colcord v. Conger, 10 Okla. 460, 62 P. 276; Petitti v. State, 2 Okla. Cr. 131, 100 P. 1122; Spencer v. State, 5 Okla. Cr. 11, 113 P. 224; Vanderburg v. State, 6 Okla. Cr. 486, 120 P. 301; Keith v. State, ante [7 Okla. Cr. 156] 123 P. 172. Every jury is sworn in each case submitted to it to render a true verdict according to the law and the evidence. After a verdict has been rendered, and a juror files an affidavit or testifies that he was influenced by anything in arriving at the verdict except the law and testimony, he swears to his own dishonor, and stultifies and impeaches himself, and he informs the court, under oath, that he has been guilty of the grossest contempt in ignoring and disregarding the instructions of the court. Instead of being encouraged to file such affidavits, or to give such testimony, when any such attempt is made, the juror should be severely punished for contempt of court. It matters not how any other court in any other state may have decided this question, we are not willing to place the administration of justice in Oklahoma at the mercy of such men. While we dislike to render a judgment which will result in punishment to any human being, yet we cannot avoid the duty imposed upon us to so construe the law as to protect the honest, hard-working and law-abiding people of the state. Laws are enacted

and courts are established to punish and thereby suppress crime. It is no part of our duty to hunt for excuses to turn guilty men loose. We must seek to protect society, and not criminals. * * *"

The motion for a new trial on the ground of misconduct of the jury in arriving at the verdict was properly overruled by the trial court. The defendant does not complain of the insufficiency of the evidence to support a verdict of the jury. The evidence was not only ample to support a verdict of the jury, but it was also sufficient to support a verdict of murder, and the defendant might well have been given a life sentence. He is indeed fortunate to receive so light a sentence as four years.

The motion for a new trial having been properly overruled and no sufficient errors of law appearing in the record to justify a reversal of the case, the judgment is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.