# RALPH BAINUM v. STATE.

No. A-6886. Opinion Filed Nov. 23, 1929.
Rehearing Denied Dec. 14, 1929.
(282 Pac. 903.)

J. Hugh Nolen and W. H. Woods, for plaintiff in error.

J. Berry King, Atty. Gen., and J. H. Lawson, Asst. Atty. Gen., for the State.

EDWARDS, P. J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Okfuskee county on a charge of murder and was sentenced to life imprisonment.

The theory of the state is that defendant, with Wesley Harrison, Alton Purdy, and Asa Pendleton, acting together in the nighttime, burglarized a warehouse of the Okemah Wholesale Grocery Company at Okemah, and, while committing the burglary, some one of the party shot and killed C. E. Ryan, a night watchman.

The record discloses that the most damaging evidence was that of George Burch and members of his family. Burch was 76 years old, and at the time was operating an illicit still just over the line in Okmulgee county. Prior to the trial he had been arrested and was in the custody of the officers, a part of the time in jail. He gave no information until his apprehension for violation of the liquor laws. His evidence and that of Bill Burch, his son, is, in substance, that on Thursday afternoon, February 24, these four persons came to the Burch home in a new Buick sedan and with permission drove into the shed near the house which was some 200 yards from the road and somewhat concealed. They remained at the Burch home until Saturday night, but were away at various times. Defendant was at the Burch home on Friday night assisting in making whisky. The other members of the party were away until midnight when they returned with a large model 51 White truck which they put in the barn. The next day all four of the party took the truck to the woods, took off the bed, burned part of it, made the platform lower, and placed a winch on it. They also brought a cotton truck used on railroad platforms, a claw bar, and crowbars, and cut the legs from the cotton truck. During this time they also brought some nitro glycerine there which was divided into two portions and a part of it buried near the Burch residence. This was stolen from a magazine north of Okmulgee. The Buick car had been stolen at Seminole and was later recovered at Kansas City

in the possession of Wesley Harrison, one of the party. They left Burch's on the afternoon of February 26, in the Buick sedan, and defendant suggested that they were going to get some "smokes." About 9 o'clock that night the wholesale grocery store was burglarized and Ryan killed, as stated. About the time of the burglary the foreman and engineer of a freight engine saw two men near the wholesale house. W. C. Blake and wife, who lived about 50 yards from it, heard a gun fire, went to the back door, and heard a man groan and heard the noise of an automobile as if it were "stuck." Shortly a closed car came around the building and Mrs. Blake testified in her judgment it was a Buick; that the back of the car seemed to be loaded with something. They saw a man at the front; saw three other men running from the direction of the wholesale house, where the homicide occurred. Also, on that night, a Ford coupe was stolen from the streets of Okemah. It was later recovered at the city of Okmulgee. About 11 o'clock in the night, Wesley Harrison, one of the party, returned to the Burch home in the Buick car and had with him 14 cases of cigarettes. He called Burch out and threw out and counted the cases and at the time told Burch he had killed a man; had left the other fellows, but would go back for them. He took a high-powered rifle, went in the direction of Okemah, and in about half an hour returned, and Pendleton, Purdy, and defendant came in a Ford coupe. Some of the party changed clothing there and left; one of them said they had some of the cigarettes concealed at Okmulgee to be disposed of at some other point. All were heavily armed and Harrison said: "If you hear my pop, you want to get busy." All then left Burch's in the sedan and the coupe, Harrison driving the sedan. That same night some of the party came to the home of J. Ray Harrison in Okmulgee and left five cases of cigarettes of the same brand as those

stolen. These were later retaken by the wholesale grocery concern whose warehouse had been burglarized. Also that night some parties of whom Purdy was one came to a place known as "Oakhurst," between Sapulpa and Tulsa, and left seven cases of cigarettes; some one of the party said they had just ridden in from Texas and did not want to leave the stuff in the car, and Purdy and Harrison brought them in the house. Later they were taken away in the absence of the proprietor. The defendant did not take the stand. This is a brief summary of the evidence, omitting numerous details. We are clearly of the opinion that it sustains the judgment.

The second assignment, the refusing requested instructions numbers 1, 2, 3, and 4 presents no error. All the requests were fairly covered by the charge of the court, and the instructions as a whole fully cover the law of the case. The third assignment is predicated on the asking of questions by the county attorney tending to show that a witness for defendant had associated with persons connected with other bank robberies and in the asking another witness if he had not served a term in the penitentiary with defendant or had been connected with some of the persons jointly charged in this case in other transactions and various other offenses. Some of these questions appear to have been asked without any purpose of following them up. This practice is condemned, and, where flagrant, may constitute a ground for reversal. In the instance here complained of, however, no objections were made to the questions at the time, nor request made that the court order the county attorney to desist from the line of questioning or that he admonish the jury. It is the duty of counsel to make objections to any evidence or line of questioning deemed incompetent in order that the court may have opportunity to see that the right to

a fair trial is not abused. Johnson v. State, 1 Okla. Cr. 321, 97 Pac. 1059, 18 Ann. Cas. 300; Baker v. State, 9 Okla. Cr. 47, 130 Pac. 524.

The last contention made is that the county attorney was guilty of misconduct in his argument to the jury. This court has followed a liberal rule in the matter of argument, but we think the argument here transcends even the liberal rule we have heretofore announced; when the county attorney referred to the witnesses for defendant several times as "slick-haired, cane-sucking dudes." A proper appreciation of the duties and dignity of his office should have suggested that the argument be pitched on a higher plane. The court should have sustained the objection to such argument and have reprimanded counsel for indulging in it. Where the county attorney appeals to the prejudice of the jury, the record will be scrutinized and the strength of the testimony against defendant considered, and, if it appears probable that such argument may have influenced the verdict, the case will be reversed. Mulkey v. State, 5 Okla. Cr. 75, 113 Pac. 532; Watson v. State, 7 Okla. Cr. 590, 124 Pac. 1101; Morgan v. State, 9 Okla. Cr. 22, 130 Pac. 522; Allen v. State, 13 Okla. Cr. 395, 164 Pac. 1002, L. R. A. 1917F, 210; Williams et al. v. State, 35 Okla. Cr. 117, 249 Pac. 433.

Under the record before us, however, the guilt of defendant is so clearly shown that the jury could not have done otherwise than find the defendant guilty, and the part of the argument complained of could not have been prejudicial.

The case is affirmed.

DAVENPORT and CHAPPELL, JJ., concur.