Billy G. LAUDERMILK, Plaintiff in Error,

v.

The STATE of Oklahoma, Defend-
ant in Error.

No. A—16990.

Court of Criminal Appeals of Oklahoma.

Feb. 23, 1972.

Bruce W. Gambill, Pawhuska, for plain-
tiff in error.

Larry Derryberry, Atty. Gen., Fred H.
Anderson, Asst. Atty. Gen., Frank Muret,
Legal Intern, for defendant in error.

BUSSEY, Presiding Judge:

Billy G. Laudermilk, hereinafter referred
to as defendant, was charged, tried, and
convicted in the District Court of Osage
County, Oklahoma for the offense of Ut-
tering a Forged Instrument, After Former
Conviction of a Felony. His punishment
was fixed at ten (10) years imprisonment,
and from said judgment and sentence, a
timely appeal has been perfected to this
Court.

At the trial, Jerome Mallory testified
that on the evening of October 17, or 18,
1970, several persons approached him in an
alley-way behind a bar in Oklahoma City,
and took his BankAmericard from his
shirt pocket. On October 20, 1970, he re-
ported the loss of the card to Bank-
Americard. He testified that he did not
know the defendant, and that only he and
his wife had authority to use the card. He
further testified that the signature on the
draft, State's Exhibit One, was not his sig-
nature.

Daniel Golf testified that he was the
manager of the C. R. Anthony Store in the
Osage Shopping Center in Tulsa. On the
afternoon of October 20, 1970, two Negro
males and a Negro female entered his
store. They shopped for approximately
five or ten minutes and the female Negro
left the store. They selected clothing and

presented merchandise at the checkout counter and tendered payment with a BankAmericard. Earl Joe Rooker, the assistant sales manager, made a sales ticket and then prepared a BankAmericard sales draft, State's Exhibit One, which the defendant signed as "Jerome P. Mallory." In compliance with the store procedure on BankAmericard sales over Fifty Dollars ($50.00), the assistant manager took the draft and the BankAmericard to the manager for verification. Mr. Golf called the BankAmericard Service Center for verification, who, in turn, called the police. Upon arrival, the police officers asked who was Jerome P. Mallory, to which the defendant replied, "I am." (Tr. 47)

Earl Joe Rooker's testimony did not differ substantially from that of the witness, Golf.

For the defense, Elray George Brown testified that on the morning of October 20, 1970, he and the defendant were on the corner of Twelfth and Eastern Streets in Oklahoma City when a person, who identified himself as Jerome P. Mallory, stopped and asked if they would like to go to Tulsa with him. Brown replied that he had children in Tulsa and would like to see them. They drove around Oklahoma City for a short time, and then proceeded to Tulsa. Upon arrival in Tulsa, the defendant, Brown, and Mallory all went to the C. R. Anthony Store, because Mallory wanted to buy some clothes. After shopping for a short while, Mallory left the store, saying that he was going to go get some cigarettes. He and the defendant remained in the store, waiting for Mallory until the police arrived. He testified that he did not purchase any merchandise, nor did he see the defendant purchase any merchandise. He did not see the defendant present the BankAmericard to the assistant manager. He testified that he has not seen the man who identified himself as Mallory since he left the store.

■ The first proposition asserts that the trial court erred in failing to declare a mis-trial upon the finding that one of the jurors had consumed an alcoholic beverage prior to the jury's deliberation. The Record reflects that the following transpired:

"MR. CROWE: Comes now the defendant and moves for a mistrial for the reason that during the noon hour and during the recess today, counsel for the defendant saw one of the jurors, Mrs. Smotherman, at the Country Club in Pawhuska, drinking an intoxicating beverage. For this reason we move for a mistrial.

"MR. HALL: The State would object to the granting of a mistrial in this matter, for the reason that the burden is on the defendant to show that if an intoxicating beverage was consumed it would interfere with that juror's ability to continue herein and render a verdict, and no proof to that effect has been tendered to the court. (Tr. 118)

The trial court subsequently took the Motion for Mistrial under advisement, and after the jury had begun its deliberation, a party stipulated as follows:

"In connection with the evidence in support of Motion for Mis-trial herein heretofore taken under advisement by the court, it is hereby stipulated and agreed between the defendant and the state that Mrs. Smotherman, the jury foreman, if she were present and testifying would testify that she had one alcoholic beverage with lunch at the country club during the noon recess."

The Record further discloses that in overruling the defendant's motion for a new trial, the trial court stated:

"I did have the opportunity to observe the member of the jury, who I assume in all course of the trial was not a jury foreman at the time this matter was brought up—merely, a member of the jury. That is, not to slight a member of the jury, but did not hold the position of jury foreman. I did not notice or observe—odor, action, or mannerisms otherwise, which would indicate that the person was in any way intoxicated—or, as far as that matter, in any manner had been drinking, because I could not smell

it, although the stipulation was, she had been—and the stipulation was entered and agreed upon. But after the drink, which I believe was one of the stipulations, I cannot see that it did impair her faculties in any way whatsoever of the Court's observance of this to 'taint in any way' the jury verdict. And this, it appears to me, that the Court not only could not find any degree of impairment of faculties, but fellow jury members (meaning the other eleven) evidently thought highly of her, and did not observe this themselves, otherwise they would not have selected this juror as foreman. Because I feel quite sure and have the utmost faith in our jury system; that is, if they thought there was something menacing there that would impair their jury verdict or impair their consideration they should not, and would not have placed this trust and confidence in this individual."

In dealing with a similar proposition in Cox v. State, Okl.Cr., 283 P.2d 545, this Court stated:

"In the later case of Allen v. State, 13 Okl.Cr. 395, 164 P. 1002, 1004, L.R.A. 1917F, 210, this court affirmed a conviction for murder and distinguished the case of Bilton v. Territory [1 Okl.Cr. 566, 99 P. 163] by laying down two "tests for determining whether the partaking of intoxicating liquors was in itself sufficient to vitiate a verdict. First, whether the intoxicant was drunk while the jury was deliberating upon the verdict. Second, whether the intoxicant incapacitated any juror so as to prevent the proper performance of his duties. In the Bilton case the intoxicating liquor was drunk throughout the progress of the trial and while the jury was deliberating upon the verdict. In the Allen case only two members of the jury partook of whiskey mixed with quinine as a medicine during a recess in the trial and the court stated:

'It is not shown that the effect of such mixture deadened the sensibilities of the jurors to any extent whatever,

or rendered either of them incapable for the proper performance of their duties.' "

The Court further stated in *Cox*, supra:

"We hesitate to make any remark which might be construed as placing the stamp of approval upon the partaking of intoxicating liquor by jurors as we feel such partaking is improper and the bailiff should be careful to see that such is not done, however, we are aware that a great many people in 'dry' Oklahoma drink intoxicating liquors at their meals and often take a drink in the evening without any noticeable aftereffects and such conduct does not render them incapable of transacting business on the following day."

We observe that this Court does not condone the taking of intoxicating liquor by a juror; however, there is nothing in the Record before this Court to reflect that the one drink incapacitated Mrs. Smotherman so as to prevent the proper performance of her duties. We, therefore, find this proposition to be without merit.

■ The second proposition contends that the defendant was prejudiced in that the judgment and sentence admitted in the second stage of the trial noted a reference to another conviction. The Record reflects that on the reverse side of the certified copy of the Judgment and Sentence of the prior conviction, the following note was typed:

"NOTE: Case to run c. s. with Case 27886."

We need only to observe that the exhibit was introduced in the second stage of the proceeding after the jury had returned a finding of defendant's guilt. It is obvious that the same did not prejudice the defendant, in that the jury assessed the minimum penalty provided by law. We, therefore, find this proposition to be without merit.

■ The final proposition is that the trial court erred in admitting the judgment and sentence of the prior conviction which did not affirmatively show a Preliminary Hearing and counsel, or an intelligent

waiver thereof. In the recent case of Tassin v. State, Okl.Cr., 489 P.2d 490, we stated:

> "We similarly find the fourth contention that there was no proof that the defendant was represented by counsel at the Preliminary Hearings pertaining to each of the former convictions, to be without merit. We have previously held that the defendant must show prejudice in the obtaining of the conviction itself before the lack of counsel at Preliminary Hearing will be considered as reversible error. McCraw v. State, Okl.Cr., 476 P.2d 370. It is not required that the State prove that a defendant was represented by counsel at a Preliminary Hearing as a part of the proof for substantiating that the defendant had been formerly convicted of a felony."

We, therefore, find this proposition to be likewise without merit.

In conclusion, we observe that the Record is free of any error which would justify modification or require reversal. The judgment and sentence is affirmed.

BRETT, J., concurs in results.

SIMMS, J., concurs.