**Andrew Jackson STIDHAM, Jr., Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–17507.**

Court of Criminal Appeals of Oklahoma.

Nov. 22, 1972.

Jerry D. Sokolosky, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Jeff L. Hartmann, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, Andrew Jackson Stidham, Jr., hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County for the offense of Burglary in the Second Degree, After Former Conviction of a Felony. His punishment was fixed at sixty (60) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Thomas W. Fowler testified that on November 3, 1971 he resided at 3716 Corbett Drive in Del City. He left home at approximately 6:00 a.m. and was called at the job at about 3:20 p.m. He checked the house and found that the back door from the garage, which had previously been locked, had been pried open with a screwdriver or knife. A half gallon bottle full of pennies, assorted old coins, two Ten Dollar bills, two Two Dollar bills, two One Dollar bills and a radio were missing from the house. His wife was a coin collector and he had the serial numbers from the missing bills. He was called to the police station that evening, whereupon he observed the missing property.

Betty Holland testified that on the afternoon in question, she lived across the street from Mr. Fowler. About 2:30 p.m. the defendant came to her door and rang the door bell. She looked through a peep hole in the door and did not open the door. She looked out her front bedroom window and observed the defendant walk across the street, go up to Mr. Fowler's house and apparently ring the door bell. He then went to the next house on the east of Fowler's house and rang their door bell. The defendant attempted to lift their garage door, but was unable to raise it. The defendant then put on a pair of gloves and went back behind the Fowler house. At this point, she called the Del City Police Department. She next saw the defendant come out of the Fowler's front door with his arms "full of things." One of the items she could see clearly was some type of radio. The defendant placed the items in a car which was parked in front of the house next door to her. He then walked back across the street and the police arrived.

Officer Burgett, of the Del City Police Department, testified that at approximately 2:30 p.m. on November 3, 1971, he was dispatched to the 3700 block of Corbett Drive to investigate a possible burglary in progress. He observed the defendant walking in a westerly direction on the sidewalk in front of 3716 Corbett Drive. He stopped the defendant and asked him if he could help him. The defendant advised him that he was looking for a residence where a person by the name of Clark was living. The officer had a telephone directory in

his unit and checked Corbett Street to see if anyone named Clark lived on that street. At this time, he received another radio call from headquarters concerning the defendant. He took the defendant across the street to the Holland residence and asked the lady if the defendant was the person that came out of the residence. He and the defendant then went back to the Fowler residence and he rang the door bell. When no one responded, the officer tried the doorknob and the door opened. He searched the defendant and found a knife and screwdriver on his person. He placed the defendant in the patrol unit and advised him of his constitutional rights. He asked the defendant where his vehicle was and the defendant pointed out a 1964 Chevrolet parked directly across the street. The officer looked into the vehicle and observed a bottle of pennies and a radio in the back seat.

Lieutenant Huff, of the Del City Police Department, testified that he investigated the burglary of the Fowler residence. He subsequently had a conversation with the defendant at the police department. He advised the defendant of his constitutional rights and asked the defendant if he had committed any other crimes in Del City. The defendant replied, "No, this was the only crime that I have committed in your town." He obtained a search warrant for the defendant's vehicle and, upon searching the same, found the items previously identified by Mr. Fowler.

The former convictions were stipulated by the parties. The defendant did not testify nor was any evidence offered in his behalf.

■ The first proposition asserts that "it was error and cause for a mistrial and a violation of due process for the trial judge not to investigate to the fullest possible extent the reported drinking of one of the jurors." The record reflects that after the jury had been sworn but prior to the presentation of any evidence, the following transpired:

"THE COURT: All right. Make your record.

"MR. BRITTON: Comes now the defendant Andrew Jackson Stidham and moves the Court for a mistrial.

"MR. GROVE: We would ask the Court to stay with this Jury by and for the reason it is insufficient grounds based upon what little there is before the Court at this time and we will stand by the Court's decision.

"THE COURT: Let the record show I have made a complete voir dire of this Jury. I asked lengthy questions and I observed the Jurors as they went to the box and I observed them as to their answers given to the questions by not only the Court but by the other attorneys.

"I also have observed this man in the hall after the report of this Juror, Mrs. Dotts, was made to this Court stating that Mr. Henderson, she smelled liquor on his breath. I feel this Juror may have had a drink of beer or some intoxicant the nature of which I do not know, but he gave every outward appearance of being sober not only in answering the questions but in his demeanor, his walk and talk in answering the questions and I feel that unless there is further evidence I do not feel there is sufficient facts to justify the discharge of this Juror after they have been sworn to try this case.

"MR. BRITTON: Comes now the defendant and moves for a mistrial and the basis for said motion as the Court has already stated one of the Jurors after they had been empaneled and sworn advised the Court that L. B. Henderson was drinking.

"THE COURT: No, no. Smelled alcohol on his breath.

"MR. BRITTON: Smelled alcohol on his breath to such an extent that she felt compelled to talk to the Court.

"THE COURT: Well, no. She didn't make any statement as to such extent that she felt compelled to call it to the attention of the Court. She merely stated that she did smell alcohol on his breath. Now that is what she said.

"Now, what do you want to do?

"MR. GROVE: I suggest, Your Honor, we proceed in this trial. No grounds for a mistrial has been shown. And it is a mere statement of a Juror that she smelled what she believed to be alcohol breath on a co-Juror. I do not believe that is sufficient to constitute grounds for a mistrial. I ask the Court if we do proceed in this case that the Court advise Mrs. Dotts outside of the presence of the other Jurors if the situation becomes worse or if she observes anything unusual to notify the Court.

"THE COURT: I am not going to advise anyone of that type that way.

"Let the record show that all of this proceedings has been conducted out of the presence of the Jury and in the presence of the defendant and his Attorney Mr. Britton and the District Attorney Mr. Grove.

"Now, I feel that in view of the reaction of the Court that there has been insufficient evidence presented to this Court to disqualify this Juror. Your Motion for a Mistrial will be overruled." (Tr. 3–5)

The record further reflects that at the conclusion of the trial the court stated:

"THE COURT: Let the record show that at the conclusion of the record in this case the Court had observed the Juror Mr. Henderson during the course of this trial, that he was alertly watching all of the proceedings apparently observing the evidence and attentive and in no way gave any exhibition of being intoxicated although he may have had some type of intoxicant on his breath as indicated by one of the Jurors." (Tr. 35)

In the recent case of Laudermilk v. State, Okl.Cr., 494 P.2d 341, wherein the appellant asserted that the trial court erred in failing to declare a mistrial upon the finding that one of the jurors had consumed an alcoholic beverage prior to the jury's deliberation, we stated:

"In dealing with a similar proposition in Cox v. State, Okl.Cr., 283 P.2d 545, this Court stated:

'In the later case of Allen v. State, 13 Okl.Cr. 395, 164 P. 1002, 1004, L.R. A.1917F, 210, this court affirmed a conviction for murder and distinguished the case of Bilton v. Territory [1 Okl.Cr. 566, 99 P. 163] by laying down two tests for determining whether the partaking of intoxicating liquors was in itself sufficient to vitiate a verdict. First, whether the intoxicant was drunk while the jury was deliberating upon the verdict. Second, whether the intoxicant incapacitated any juror so as to prevent the proper performance of his duties. In the Bilton case the intoxicating liquor was drunk throughout the progress of the trial and while the jury was deliberating upon the verdict. In the Allen case only two members of the jury partook of whiskey mixed with quinine as a medicine during a recess in the trial and the court stated:

"It is not shown that the effect of such mixture deadened the sensibilities of the jurors to any extent whatever, or rendered either of them incapable for the proper performance of their duties." '

"The Court further stated in *Cox*, supra:

'We hesitate to make any remark which might be construed as placing the stamp of approval upon the partaking of intoxicating liquor by jurors as we feel such partaking is improper and the bailiff should be careful to see that such is not done, however, we are aware that a great many people in "dry" Oklahoma drink intoxicating liquors at their meals and often take a

drink in the evening without any noticeable aftereffects and such conduct does not render them incapable of transacting business on the following day.'

"We observe that this Court does not condone the taking of intoxicating liquor by a juror; however, there is nothing in the Record before this Court to reflect that the one drink incapacitated Mrs. Smotherman so as to prevent the proper performance of her duties. * * *"

In the instant case, there is likewise nothing in the record to reflect that the juror was intoxicated so as to prevent the proper performance of his duties. We, therefore, find this proposition to be without merit.

■ The final two propositions assert that the Habitual Criminal Act is unconstitutional and that the punishment is excessive. In Butler v. State, Okl.Cr., 442 P.2d 532, we stated in the fourth paragraph of the Syllabus:

"The Habitual Criminal Statute is a valid, existing penal provision and does not conflict in any way with the Constitutional guaranties possessed by the accused."

■ In reviewing the question of excessiveness of punishment, this Court has consistently held that the question must be determined by a study of all the facts and circumstances in each case and this Court does not have the power to modify a sentence unless we can conscientiously say that under all facts and circumstances, the sentence is so excessive as to shock the conscience of the Court. Roberts v. State, Okl.Cr., 473 P.2d 264. In the interest of justice, the judgment and sentence is modified to a term of thirty (30) years imprisonment, and as so modified, is affirmed. Modified and affirmed.

BRETT, J., concurs.