## CARL OELKE v. STATE.

No. A-1576. Opinion Filed July 19, 1913.

(133 Pac. 1140.)

1. **INDICTMENT AND INFORMATION** — *Information for Misdemeanor*—Sufficiency. An information charging a misdemeanor, preferred and signed by a legally constituted assistant county attorney, is sufficient to sustain a conviction, where no objection is made by motion to set aside, or by demurrer thereto.

2. **SAME.** Where an information charging a misdemeanor states an offense, and is sworn to positively by the county attorney, it is sufficient to authorize a warrant for the arrest of the defendant, and is sufficient to authorize the county court to put the defendant upon his trial.

3. **TRIAL**—Credibility of Witnesses—Question for Jury. The credibility of the witnesses is the exclusive province of the jury to determine, and if they believe a witness has been impeached, the law does not require them to believe him, it matters not how much his evidence may have been corroborated; and it is error for the trial court to take this right away from them by its instructions.

4. **SAME**—Verdict—Correction—Instructions. Where upon the request of the defendant the court instructs the jury that, in the event they find a verdict of guilty, they may assess and declare the punishment in their verdict, it is the duty of the court to require the jury, if they find a verdict of guilty and fail to agree upon the punishment, to so say by their verdict; and, if the jury render a verdict not in form, the court should with proper instructions direct them to reconsider it.

*Appeal from County Court, Canadian County;*
*W. A. Maurer, Judge.*

Carl Oelke was convicted of a misdemeanor, and appeals. Reversed, and new trial granted.

*Forrest & Sansom,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson* and *E. G. Spilman,* Asst. Attys. Gen., for the State.

DOYLE, J.   This appeal is prosecuted from a conviction had in the county court of Canadian county on the 11th day of November, 1911.   The judgment and sentence of the court was that the defendant be confined at hard labor in the county jail for a period of six months, and that he pay a fine of $500.

The information, omitting title and indorsements, is as follows:

"Now comes W. E. Bennett, assistant county attorney of Canadian county, state of Oklahoma, who prosecutes on behalf of the state, and gives the court to know and be informed that one Carl Oelke, late of the county of Canadian and state of Oklahoma, on or about the 3d day of July, in the year of our Lord one thousand nine hundred and eleven, at and within the said county and state, did then and there willfully and unlawfully sell malt liquor, to wit, beer, to John Carnahan and J. S. Watson, said sale being made at one and the same time, and constituting a single transaction, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state.

                                              "W. E. BENNETT,
                                      "Assistant County Attorney.

"The State of Oklahoma, Canadian County—ss.:

    "Personally appeared J. L. Trevathan who, being first duly sworn, on his oath says that the statement contained in the above information is true.

                                              "J. L. TREVATHAN.

    "Subscribed in my presence, and sworn to before me, this 17th day of August, 1911.

    "[Seal.]                                "J. O. BREUER,
                                              "Clerk County Court."

    The evidence was substantially as follows:   J. S. Watson, the first witness called, testified that he bought two bottles of beer at the Belmont Hotel, and John Carnahan paid for it, and he and Mr. Carnahan drank it.   On cross-examination he stated that he was employed in gathering evidence in the enforcement of the prohibitory law, and his compensation depended partly upon his success; that he had been drinking before he went to the defendant's place.   John Carnahan testified that he was a farmer, living near Calumet; that he went to the Belmont Hotel with Watson and bought a couple of bottles, and they drank it,

and he was then asked if it tasted like beer, and answered: "No, sir; I do not think so." He was then asked if it tasted more like beer than anything you could think of, and answered: "No, sir." J. L. Trevathan, county attorney, who verified the information, was called as a witness for the defense, and testified that he had no personal knowledge of the commission of the offense charged; that his verification was based on the testimony of said witnesses before a court of inquiry.

It will be observed that the name of the county attorney does not appear in the body of the information, nor is the name of the county attorney subscribed thereto, as required by section 5694, Rev. Laws 1910. We have held that an information signed in the name of the county attorney, by a duly and legally appointed assistant county attorney, satisfies the law, and is sufficient. *McGarrah v. State, ante,* 133 Pac. 260. That W. E. Bennett, assistant county attorney, was acting under and by the directions of the county attorney appears from the fact that the information is verified by the county attorney, and the record shows that the county attorney in person prosecuted the case. We think the omission of the name of the county attorney in the body of the information is a technical defect which did not affect the substantial rights of the defendant, and the error was waived by failing to file a proper motion or demurrer thereto. The proper practice is for the assistant county attorney to sign the name of his principal to the information, yet we think it is sufficient when signed by and in the name of a legally constituted assistant, when no objection thereto before verdict is made. Where an information charging a misdemeanor is sworn to positively by the county attorney, it is sufficient to authorize a warrant for the arrest of the defendant, and is sufficient to authorize the county court to put the defendant upon his trial, even though the county attorney had no personal knowledge of the commission of the offense charged.

The record shows that the defendant requested that the court instruct the jury that, in the event they found a verdict of guilty, they should assess and declare the punishment in their verdict. The jury returned a general verdict, finding the defend-

ant guilty, but did not say by their verdict that they were unable to agree upon the punishment to be inflicted, and the court imposed the maximum punishment. Section 5926, Rev. Laws 1910, provides:

"If the jury render a verdict not in form, the court may, with proper instructions as to the law, direct them to reconsider it, and it cannot be recorded until it be rendered in some form from which it can be clearly understood what is the intent of the jury."

We think it was the duty of the court to require the jury to render a formal verdict, showing that they were unable to agree upon the punishment.

It also appears that an instruction was given, which by repeated decisions of this court has been held to constitute reversible error in a close case. *Rea v. State,* 3 Okla. Cr. 269, 105 Pac. 381; *Foster v. State,* 8 Okla. Cr. 139, 126 Pac. 835.

For the errors indicated, the judgment of the lower court is reversed, and a new trial granted.

ARMSTRONG, P. J., and FURMAN, J., concur.