## JOHN RAMBO v. STATE.

No. A-2669.  Opinion Filed January 27, 1917.

(162 Pac. 449.)

1.  **TRIAL—Instructions.** · Where the court, without being requested to do so by the defendant, correctly instructed the jury as to the punishment they might assess, in case they found the defendant guilty, **held,** that this is not error, since, under section 5933, Rev. Laws 1910, the jury may in all cases of conviction, when so instructed by the court, assess the punishment, if they see fit, regardless of whether the defendant requests it or not.

2 .  **WITNESSES — Cross-Examination — Examination of Accused.** Where the defendant takes the stand in his own behalf, and denies all knowledge of the facts and acts which constitute the alleged crime, the state may, on cross-examination, ask him about other transactions which would tend to contradict his statements.

*Error from County Court, Tulsa County;*
*J. W. Woodford, Judge.*

John Rambo was convicted of having possession of intoxicating liquor with intent to violate the prohibitory law, and he brings error.  Affirmed.

*J. R. League,* for plaintiff in error.

*R. McMillan,* Asst. Atty. Gen., for the State.

BRETT, J.  The plaintiff in error in this case, John Rambo, who will be referred to as defendant, and his brother, Billy Rambo, were jointly charged with having in their possession intoxicating liquor with the intent to dispose of same in violation of the prohibition laws of the state.

The facts are that John Rambo lived on a farm near Bixby, Tulsa county, and his brother, Billy Rambo, lived with him.  There is evidence that it was generally reputed that liquor could be purchased at John Rambo's place.

The officers went out there with a search warrant, and caught Billy just as he was coming out of the house with three quart bottles of whiskey; and on further search they found 27 five-gallon kegs of whiskey concealed under some cotton bolls and kaffir corn in a shed near the house; and several hen nests were on top of this cotton and kaffir corn, and some of the hens were setting, which gave to the surroundings a still further appearance of undisputed innocence. Billy Rambo was in the last stages of consumption, and was never able to appear in court or to be put upon trial. And a strong effort was made by John, the defendant in this case, and his witnesses, to cast all responsibility upon Billy for the presence of so much liquor upon the defendant's premises. But the jury, who saw the witnesses, heard all the evidence, and were the sole judges of the weight and value to be given their testimony, did not accept this theory, but found the defendant, John Rambo, guilty, and assessed the maximum penalty of $500 and six months in jail.

The defendant complains of many things that occurred during the progress of the trial; but the things complained of as error are proper proceedings, and none of them, we think, affected the substantial rights of the defendant.

1. For instance, the court in its instructions said to the jury:

"If you should find the defendant guilty of the offense charged in the information, you may fix his punishment at a fine of not less than $50 nor more than $500, and by imprisonment in the county jail for not less than 30 days nor more than six months."

An exception was taken to this instruction, and the defendant in his brief says:

"To suggest to the jury the punishment which might be inflicted, we think, is an inference and suggestion to the jury that the court expects to find the defendant guilty. That the court should allow no intimation of its attitude or opinion to reach the jury when same may be avoided, and certainly in a voluntary manner, is so clearly fundamental law, lying at the very basis of the jury system, that we deem it entirely unnecessary to consume any time or space in arguing the proposition to this court."

But section 5933, Rev. Laws 1910, provides that:

"In all cases of a verdict of conviction for any offense against any of the laws of the State of Oklahoma, the jury may, and shall upon the request of the defendant, assess and declare the punishment in their verdict within the limitations fixed by law, and the court shall render a judgment according to such verdict, except as hereinafter provided."

And it will be noticed that, as stated in *Chandler v. State*, 3 Okla. Cr. 254, 105 Pac. 375, 107 Pac. 735:

"Under this section the jury has the right to fix the punishment, whether the court so directs or not. They must fix the punishment if the defendant requests it. If the court had not so instructed the jury, they could have, and might have, fixed the punishment."

Hence, under this state of facts, we fail to see how the defendant would be prejudiced by the court informing the jury as to what the penalty fixed by the law is; for under the statute neither the court nor the defendant can arbitrarily take that phase of the case from the jury. They have the right to pass upon it, if they see fit, and, that being true, the defendant is not prejudiced, we think, by the court telling the jury plainly what the law is on that phase of the case, which they have a right to pass upon, if they see fit, even without the request of the de-

fendant.  The distinction is that in *all* cases of conviction the jury *may* assess the punishment, but, if the defendant request it, they *must* assess the punishment, or say by their verdict that they are unable to agree upon the punishment.  *Oelke v. State,* 10 Okla. Cr. 49, 133 Pac. 1140.

2.  It also appears that some time prior to the search and seizure involved in this case Billy Rambo had been intercepted on the highway by an officer by the name of L. P. McGuire with two wagonloads of whiskey, consisting of 48 five-gallon kegs.  In the trial of this case the defendant, John Rambo, took the witness stand in his own behalf, and on direct examination denied that he knew Billy was handling whiskey, and stated that he had no knowledge of any whiskey having ever been on his premises, except the three quart bottles Billy was taking from the house at the time the officers appeared to make the search.  On cross-examination the county attorney asked him if he was not with Billy Rambo and driving one of the wagons at the time he was intercepted by L. P. McGuire with the 48 kegs of whiskey, and if the two wagons and teams used to haul this whiskey did not belong to him.  An objection to these questions was overruled by the court, and the defendant insists that this ruling of the court was error.  But the defendant himself laid the foundations for this line of questions.  To say that he could go on the stand and testify that he knew nothing about any whiskey except the three bottles, and that the state could not then on cross-examination ask him about other transactions which would tend to contradict that statement, is absurd.  The questions were both pertinent and proper, and clearly legitimate cross-examination.

There are other matters assigned as error, but we have carefully read the entire record, and examined every

phase of the case; and, finding no prejudicial error, the judgment is affirmed.

DOYLE, P. J., and ARMSTRONG; J., concur.