# W. M. BOSWELL v. STATE.

No. A.-3499. Opinion Filed May 2, 1921.
Rehearing Denied Sept. 12, 1921.
(200 Pac. 256.)

(Syllabus.)

1. **Indictment and Information—Positive Verification of Information —Sufficiency—Issuance of Warrant.** Where an information in legal form is verified as true in positive terms, such verification constitutes a sufficient showing of probable cause to authorize the issuance of a warrant of arrest and to put the defendant on trial, and on a demurrer to the information and motion to quash the warrant no issue can be made as to the knowledge or want of knowledge of the facts charged on the part of the person who verified the information; nor can the information be set aside on the ground that the person who verified it had no personal knowledge of the facts verified.

2. **Same—Prosecution by Verified Complaint.** Section 17 of the Bill of Rights of our Constitution and our statutes on criminal procedure provide for two methods of prosecuting misdemeanor cases. In courts of record the prosecution must be by indictment or information; prosecutions in courts not of record may be instituted upon a duly verified complaint. By statutory provision only the latter requires the indorsement, "I have examined the facts in this case and recommend that a warrant do issue." Rev. Laws 1910, § 6176.

3. **Evidence—Proof of Venue in Unlawful Transportation of Liquor —States—South Boundary of Oklahoma.** The south line of the state of Oklahoma and of the counties bordering upon Red river is the south bank of Red river, and the evidence in this case sufficiently discloses that the offense charged was committed in Cotton county.

Appeal from County Court, Cotton County; J. C. Norman, Judge.

W. M. Boswell was convicted of the illegal transportation of intoxicating liquor, and he appeals. Affirmed.

Charles H. Ruth and Lon Morris, for plaintiff in error.

S. P. Freeling, Atty. Gen., and W. C. Hall, Asst. Atty. Gen., for the State.

BESSEY, J. An information was filed against W. M. Boswell, plaintiff in error, hereinafter called the defendant,

in the county court of Cotton county, Okla., on March 15, 1918, charging him with illegally transporting intoxicating liquor on that day from a particular place in that county to another designated place in the same county. On the trial of the case, September 10, 1918, a verdict was rendered finding the defendant guilty as charged and fixing his punishment at a fine of $150 and one month in jail, and judgment and sentence was rendered accordingly September 21, 1918.

J. D. Smith, a peace officer, and L. O. Watson, a deputy sheriff, first saw the defendant in a Ford sedan car at the Valley View schoolhouse in Cotton county, Okla., about four miles from the Burkburnett bridge, spanning Red river at the Texas-Oklahoma line. Smith searched the car for liquor, but found none. While this search was in progress Watson discovered another car, a large Davis car, following this Ford sedan about one-fourth mile in the rear, and this Davis car turned off on another road leading back towards the bridge. Watson called Smith's attention to this other car, and they followed it back to the bridge.

While in pursuit of this car they stopped and telephoned to the keeper of the tollgate at the bridge to lock the gate. The Davis car was driven upon the bridge to near the Texas end, where the driver, finding that he could proceed no farther, abandoned the car and fled into the sand hills along the river bank. These officers found 157 quarts of whisky in the Davis car. The defendant, some minutes later, came back to the bridge in his Ford sedan, and these officers again searched the car and found the sacks were gone, and upon inquiry the defendant said he threw them over in the valley.

The defendant, who said that his name was Walter Graham, and that he lived at Burkburnett, there stated that he had come over into Oklahoma from the Texas side of the river to see a Mr. Mitchell, and that he had returned to the bridge to see the outcome of the race between the officers

and the driver of the Davis car. The officers then arrested the defendant and took charge of both cars, and one of them testified that he found curtains in the Ford sedan that fit the Davis car.

The keeper of the tollgate at the end of the bridge testified that the defendant drove from Oklahoma across the bridge into Texas on the evening of the day previous, followed by a man driving a Davis car, and that the defendant paid the toll for both cars; that the next morning they appeared again, on the Texas side, on their way into Oklahoma, and the defendant, who preceded the Davis car, again paid the toll for both cars; that after they had passed into Oklahoma she received a telephone message directing her to lock the tollgate, which she did, and that a little later the Davis car was again driven upon the bridge from the Oklahoma side to near where the tollgate was closed and locked at the Texas end of the bridge; that the officers in pursuit of the Davis car drove onto the bridge; that some minutes later the defendant also drove up in the rear; and that the officers then took charge of both cars and placed the defendant under arrest.

The defendant claimed that he was a farmer living on and cultivating 160 acres of land three miles south of Oklahoma City; that he was the owner of 65 head of cattle, 25 of which were milch cows; that he had raised that year 520 bushels of wheat and had 17 acres of cotton in cultivation; that he came through Cotton county on this trip with his nephew, Hobart Boswell, en route to Electra, Tex.; that on the day following he came back into Cotton county from Texas to see a Mr. Mitchell about buying some cows. Defendant denied that he paid the toll for the Davis car on either occasion, as stated by the keeper of the tollgate, and stated that he did not know the driver of the Davis car and

had nothing to do with the liquor found in that car; that besides looking for milch cows he was trying to sell his Ford sedan, and told the officers he got the car at Ft. Cobb, which he acknowledged was a false statement. He also acknowledged that the name he gave the officers was an assumed name, and that the statements that he made to the officers as to his business and place of residence was untrue. He stated that he had never before been arrested on any charge, and that he made these false statements to the officers so that his friends in Oklahoma City would not find out that he was in a mix-up charged with transporting whisky. Defendant claimed that at the time of his arrest he was on his way back to Electra, Tex., to get his nephew.

The sheriff of Cotton county testified that he had found curtains in the Ford sedan that fit the Davis car, and that when he asked defendant to explain the presence of these curtains the defendant replied that he did not know anything about the curtains, and that he was not talking, and that he refused to make further explanations.

It was the theory of the state that the defendant and the driver of the Davis car were jointly interested in the transportation of the whisky found in the Davis car, and that the defendant in his Ford sedan was acting as an advance guard and scout, for the purpose of giving warning to the driver of the car containing the whisky whenever it might appear that there was danger of being discovered or apprehended by officers.

The defendant's claim was that his crossing of the bridge on these two days near the same time that the driver of the Davis car crossed was merely a coincidence, and that he was innocent of the charge and had nothing whatever to do with the liquor confiscated by the officers.

The defendant insists that his motion to quash the information and warrant should have been sustained because the information was verified by a peace officer who had no actual personal knowledge of some of the facts therein stated. The deponent verified the statements as true in substance and fact. The question here presented was well considered in the case of Moss v. State, 4 Okla. Cr. 247, 111 Pac. 950, as follows:

"Where an information in legal form is verified as true in positive terms, such verification constitutes a sufficient showing of probable cause to authorize the issuance of a warrant of arrest and to put the defendant on trial; and on a motion to quash the information no issue can be made as to the knowledge or want of knowledge of the facts charged on the part of the person who verified the information; nor can the information be set aside on the ground that the person who verified it had no personal knowledge of the facts alleged."

The rule as stated above has since been followed in other decisions of this court and in numerous decisions of the courts of other states.    Munn v. State, 5 Okla. Cr. 245, 114 Pac. 272; Martin v. State, 5 Okla. Cr. 355, 114 Pac. 1112; Oelke v. State, 10 Okla. Cr. 49, 133 Pac. 1140.

In the second specification of error defendant complains that the information did not comply with section 6176, R. L. 1910, in that it did not bear the indorsement of. the county attorney, "I have examined the facts in this case and recommend that a warrant do issue."

Section 17 of the Bill of Rights of our Constitution and section 5693, R. L. 1910, provide for two methods of prosecuting misdemeanors.    The prosecution may be by information filed in the county, superior, or district court, or the prosecution may be upon complaint lodged with a justice of

the peace or court not of record having jurisdiction of the offense.      Section 6176, supra, is as follows:

"In all misdemeanor cases, before a warrant shall issue for the arrest of the defendant, the complaint must be submitted to the county attorney, or drawn by him and endorsed as follows: 'I have examined the facts in this case and recommend that a warrant do issue,' and then filed with the court. If the action be brought without such indorsement the complaining witness must file with the court a bond to be approved by the court in the sum of not less than fifty dollars, conditioned to pay all costs, and the county shall in no event be liable for any costs incurred in that action, unless the complaint be first so indorsed by the county attorney."

Section 5694, R. L. 1910, provides as follows:

"The county attorney shall subscribe his name to informations filed in the county, superior or district court and indorse thereon the names of the witnesses known to him at the time of filing of the same. He shall also indorse thereon the names of such other witnesses as may afterwards become known to him, at such time as the court may by rule prescribe. All informations shall be verified by the oath of the prosecuting attorney, complainant or some other person."

Section 6176, above quoted, relates to complaints in misdemeanor cases in justice of the peace courts and courts not of record, and has no application to an information lodged in the county court by the county attorney, as was done in this case. The purpose of this statute is to prevent private persons from instituting and maintaining criminal actions in misdemeanor cases maliciously or ill-advisedly and without the consent of the county attorney and at the cost of the state, and the indorsement, "I have examined the facts in this case and recommend that a warrant do issue," should be indorsed on the complaint by the county attorney unless the complaining witness who institutes such proceeding executes a bond conditioned to pay all costs. But where, as in this

case, the prosecution is upon information signed by the county attorney and verified in positive terms by the oath of a peace officer, and where the county attorney appears and prosecutes the action on behalf of the state, it is not necessary for such information to bear such indorsement.

In this opinion we think it unnecessary to give more than a synopsis of the testimony appearing in the record. Suffice to say that we find, upon a careful examination of all of the testimony, that there was ample evidence to support the verdict.

The defendant insists that the venue of the action was not proven as being in Cotton county, and that the court was for that reason without jurisdiction. The testimony discloses that this 157 quarts of whisky was conveyed from a spot near the Valley View schoolhouse in Cotton county, Okla., to near the south end of Burkburnett bridge, spanning Red river from that county into Texas. In a recent case, Keeter v. State, 19 Okla. Cr.—, 196 Pac. 970, and in the case of Jentho et al. v. State, 19 Okla. Cr.—, 200 Pac. 251, it was held that the south line of the state of Oklahoma and of the counties bordering upon the state of Texas is the south bank of Red river. To the same effect is the holding of the United States Supreme Court in the case of the State of Oklahoma v. State of Texas, 255 U. S. —, 41 Sup. Ct. 420, 65 L. Ed. —, written by Mr. Justice Pitney and filed April 11, 1921.

For the reasons above stated, the judgment of the trial court is affirmed.

DOYLE, P. J., and MATSON, J., concur.