## JACK LEASURE v. STATE.

No. A-7628.  Opinion Filed Aug. 23, 1930.
Rehearing Denied Sept. 13, 1930.
(290 Pac. 931.)

308

W. E. Crowe and G. W. Buckner, for plaintiff in error.

J. Berry King, Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter called the defendant, was convicted of the crime of selling whisky to a minor, and sentenced to pay a fine of $2,000 and be confined in the penitentiary for 5 years. Motion for new trial was filed, considered, and overruled, and the defendant reserved an exception and has appealed by petition in error and case-made to this court.

James Moran testified on behalf of the state, in substance, that he knew where Jack Leasure was living on February 2, 1929; he went out to his place about 8:30 or 9 o'clock in the evening; Frank Leverton and Bill Porter were with him—

"We drove out to his house and stopped in the northeast part of the yard and headed the car back toward the house; I got out and started to the house and Jack Leasure met me with a search light and asked what I wanted; that is about all I remember now.  I told him I wanted a quart of whisky; he went in the house and came back out and said he would have to go get it, he did not have it at the house; I got back in the car and drove down the road, the defendant standing on the side of the car; we were driving a Ford roadster; we got down to a point and stopped and defendant got off the car and crossed the road to the left side and was gone about five minutes and came back and handed me the whisky and I handed him

the money; we got two pints of whisky and paid $3.50 for it."

Bill Porter and Frank Leverton testified in substance to the same facts as did James Moran. James Moran testified he was 17 years old at the time he claims he bought the whisky from the defendant. The defendant denied selling the whisky to the prosecuting witness, and denied he was at home the evening it is alleged he sold the whisky to Moran, and called several witnesses who testified he was at another place visiting a family and was not at home. He called several witnesses as to the reputation for truth and veracity of the state's witnesses being bad. This is, in substance, the testimony.

Several errors are assigned by the defendant alleged to have been committed by the court in the trial of the case. The first assignment argued is error of the court in submitting to the jury, over the objection of the defendant, the instruction to fix the punishment should they find the defendant guilty, the defendant not having requested the court to instruct the jury on that question; the said error complained of being instruction No. 8 of the court.

Section 2750, C. O. S. 1921, provides:

"In all cases of a verdict of conviction for any offense against any of the laws of the State of Oklahoma, the jury may, and shall upon the request of the defendant, assess and declare the punishment in their verdict within the limitations fixed by law, and the court shall render a judgment according to such verdict, except as hereinafter provided."

The question to be determined, then, is section 2750, supra, mandatory or directory; that is, is it such an error for the court to instruct the jury to fix the punishment without the defendant having first requested it as to justify a reversal, or does such an instruction under

the statute, where the defendant did not request it, have a tendency to prejudice the rights of the defendant before the jury?

The defendant relies upon the following cases: Chandler v. State, 3 Okla. Cr. 254, 105 Pac. 375, 107 Pac. 735; Baker v. State, 3 Okla. Cr. 265, 105 Pac. 379; and McClure v. State, 42 Okla. Cr. 302, 275 Pac. 1073. In each of these cases it is held that an instruction to the jury by the court, not requested by the defendant, was not grounds for a reversal in the absence of a showing that the punishment fixed by the jury was excessive; the holding of the court being that it is not the duty of the court to give an instruction to the jury directing it to fix the punishment when not requested by the defendant. Unless it is disclosed by the record that the punishment fixed by the jury is excessive, the giving of an instruction to fix the punishment is not grounds for reversal. It is urged by the defendant that in the case at bar the punishment fixed is excessive and for that reason the court erred in directing the jury to fix the punishment. While it is true the jury fixed the maximum punishment fixed by the statute, we hold there is nothing in the record to show that the instruction given by the court in any way whatever biased or prejudiced the rights of the defendant before the jury, and the court did not err in giving the instruction complained of.

It is next urged by the defendant that there was misconduct on the part of the jury in receiving and considering evidence outside the courtroom, after it had retired to deliberate on its verdict, prejudicial to the rights of the defendant. The defendant, in support of his contention that there was misconduct on the part of the jurors, while the jury was considering its verdict, offered affidavits of witnesses who claim to have had a conversation with one

or more of the jurors after the verdict had been received and returned by the court and the jury discharged.

In the case of Baumle v. Verde, 50 Okla. 610, 150 Pac. 876, this court held:

"Upon grounds of public policy, trial courts will not receive the affidavits, depositions, or oral testimony of jurors to impeach their verdict."

In Hayes v. State, 35 Okla. Cr. 19, 247 Pac. 111, this court says:

"The verdict of a jury cannot be impeached by the affidavit or oral testimony of a juror. * * * The defendant sought to impeach the verdict by the affidavit and oral testimony of a juror to the effect that another juror knew two of the witnesses who testified in support of defendant's alibi, and that this juror stated, during the deliberations of the jury, that these witnesses were not entitled to credence. If any such statement was made or considered, the verdict could not be impeached in this manner."

In Brantley v. State, 15 Okla. Cr. 6, 175 Pac. 51, in the syllabus, the court says:

"Affidavits or oral testimony of jurors are inadmissible to impeach their verdict, and affidavits of the defendant, or any other person, of alleged misconduct of a juror, upon information derived from particular jurors, are inadmissible to impeach the verdict."

In Revis v. State, 42 Okla. Cr. 198, 275 Pac. 351, this court, in the second paragraph of the syllabus, said:

"The verdict of a jury cannot be impeached by the affidavit or oral testimony of the jurors."

The motion for a new trial on the ground of alleged misconduct of the jury in arriving at a verdict was properly overruled by the court.

It is next contended by the defendant that the verdict of the jury is contrary to the facts and is not sustained by sufficient evidence; the evidence on behalf of the state's witnesses showing positively that he bought whisky from the defendant, that the witness James Moran was only 17 years of age at the time of the purchase of the whisky. The witnesses on behalf of the defendant attempt to show that he was not at home at the time of the alleged sale of the whisky. The testimony is conflicting, and it was a question for the jury to decide which of the two witnesses it would believe. Where there is any competent testimony to go to the jury, though there be a conflict, this court will not disturb the verdict on that ground alone.

Finding no errors in the record sufficient to warrant a reversal, the judgment of the trial court is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.