**John Gordon REDDELL, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–75–259.**

Court of Criminal Appeals of Oklahoma.

Dec. 8, 1975.

Sylvia Van Kolken, Stephen Jones, Jones, Gungold & Van Kolken, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., James Swartz, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Judge:

Appellant, John Gordon Reddell, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Garfield County, Case No. CRF–74–829, for the offense of Rape, First Degree, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 1114. His punishment was fixed by jury at a term of eighteen (18) years' imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

The State's first witness at trial was Sandy Bland, the prosecutrix, who testified she was 18 years of age and had never been married. She stated she resided at the Lamplighter Trailer Park in Garfield County, Enid, Oklahoma, and she became acquainted with the defendant on or about the first day of August, 1974. She testified that on that date, while out in front of her trailer house, the defendant drove up and introduced himself to be a 30-year-old medical student who was working in the oil field during the summer. She said the conversation lasted approximately 15 minutes and the defendant left. He returned two days later and at that time he asked her to go out with him and she replied that she would go get a Coke with him. While proceeding to get the Coke the defendant's car did not run properly so they returned to her trailer. She testified that on these two occasions when she had seen the defendant she told him that he was too old and that she was not going to go out with him. She stated that the defendant left that evening but returned at about 10:30 p. m., at which time she told the defendant that she would not let him into the trailer and that she wished him to go away. She told him that if he had anything important to say he could call her as she had given him her telephone number the first time she had met him. She further testified that on August 11, the defendant called her to ask her out again and she told him that she had to go to work. He asked if she would go out with him after work but she replied that she did not want to see him anymore. The defendant then told her that he had to leave the next day and wanted to see her, but she told him good-bye and hung up the telephone. While dressing for work that evening, the defendant walked into her trailer and she told him to leave whereupon he threw her upon the couch and locked the trailer door. She testified that she then got up, grabbed her keys and told him that it was her first night to work at the Pizza Hut she did not want to be late for work. Thereafter, he grabbed her, started choking her and told her, "If you scream, I'll kill you." He pushed her into the back bedroom and told her to remove her clothes but she refused. He then told her he would kill her or knock her out and take her clothes off himself. At this time she was crying and she took her clothes off and he had sexual intercourse with her on the bed. She testified that the defendant accomplished penetration into her and that thereafter he released her and she then went to the bathroom and dressed. He waited for her and after she dressed he told her that he cared for her and wanted to see her before he left, but she told him that she had to leave to go to the Pizza Hut. She testified that the defendant asked her if she was going to call the police and she told him that she did not have any evidence against him. Thereafter, she went to the Pizza Hut where she related the incident to the manager, Bill Green. She thereafter unsuccessfully tried to call a friend, Randy Elson, and thereafter went back to her trailer, changed her clothes and then left to look for her friends. She found her friends and went to the Video Theater and related the incident to them. She did not call the police or her parents because she was too afraid. She stated that she watched the movie at the Video Theater with her friends and thereafter she and her friends went looking for the defendant. Not finding him, they returned to her trailer at approximately 11:00 p. m. She stated that after a long talk with her

friend, Kevin Nance, he called her parents and then took her to her parents' home around 11:30 or 12:00. She then related the incident to her parents and the next day she went with her parents and related the incident to the Sheriff. That afternoon she and her parents went to the doctor's office, but after waiting for approximately three hours they left because there were so many people still waiting to see the doctor. The following day she talked to the police and went to Dr. Reinstein who examined her.

On cross-examination she testified that her telephone number which she gave to the defendant was unlisted. She further stated that she never went to a restaurant with the defendant and that her appearance was essentially the same as that in August of 1974, except that her hair was somewhat darker. She further stated that the movie which she had seen on that evening with her friends was one which she had see once before. Lastly, she testified that she had brain surgery some two and one-half years ago, but that it had not affected her memory.

On re-direct examination she testified that some two and one-half hours after the incident in question she noticed she had begun a menstrual cycle.

The parties then stipulated that Bill Green's testimony taken at the preliminary hearing would be read in open court and introduced into evidence. The testimony was essentially that Bill Green was the manager of the Pizza Hut in Enid, Oklahoma, and was so employed on August 11, 1974, and at this time the prosecutrix was an employee there. He testified that on that day the prosecutrix came to work approximately 10 to 15 minutes late in a very upset and emotional state. He testified that she was shaking all over and crying and that after he had a conversation with her she left.

Randy Elson testified that he was 18 years of age, a student at Northwestern State College and was acquainted with the prosecutrix, having known her for approx-

imately six years. He testified that on August 11 he had occasion to see the prosecutrix when she followed him and Kevin Nance to the Video Theater at approximately 8:00 p.m. He said that she was crying and appeared to be in a state of shock and that, consequently, they had tried to calm her. They went to a movie during which she continued crying most of the time. He stated that after the movie they went to look for the defendant, but being unsuccessful they took the prosecutrix back to her trailer and called her parents. He related that they tried to talk the prosecutrix into going to the police but she was too afraid. After calling her parents, they took her to her parents' home. Approximately 10 days before the incident in question he was in the Wee Too Restaurant with the prosecutrix. On cross-examination he testified that at the time he and the prosecutrix had gone to the Wee Too Restaurant they had eaten dinner. He further stated that on the evening the alleged incident occurred, he observed no bruises about the prosecutrix' body.

Kevin Nance testified he was 18 years of age, a student at Northwestern State College, and that he had been acquainted with the prosecutrix since the sixth grade. He thereafter testified to essentially the same facts as had Randy Elson.

Bill Henderson testified he was Deputy Sheriff for Garfield County and was so employed on August 12 when he had occasion to talk with the prosecutrix and her parents. He stated that on that date he investigated an alleged rape and, based upon the information revealed by the investigation, he obtained a warrant for the arrest of the defendant. He further stated that the defendant was thereafter arrested in Bartlesville which was the home of the defendant's parents and the defendant was subsequently returned to Enid.

Charles Ryan testified that he was an investigator with the District Attorney's Office in Enid and that he had a conversation with the defendant on August 16. He testified that at that time he advised the

defendant of his *Miranda* rights and that the substance of the conversation concerned whether or not the defendant had had sexual intercourse with the prosecutrix on August 11. He stated that the defendant related to him that he did have sexual intercourse with the prosecutrix on said day.

The State then rested.

Ruth McKim testified for the defense. She testified she was employed at the Wee Too Restaurant and had been for the past year. She stated that her working hours were normally from 11:45 a. m. to 8:00 p. m. and that she had previously seen the defendant and the prosecutrix in the restaurant just after closing one evening during the summer and that at that time she told them that it was too late to get anything to eat. On cross-examination she testified that the prosecutrix had not been in the restaurant with any other boy that she had seen.

The defense then rested.

During the second stage of the trial proceedings, the testimony taken at the preliminary hearing relating to the second page of the Information was read in open court and introduced into evidence. The testimony was essentially as follows. The Court Clerk, M. A. Mikel, testified that he was Court Clerk of Washington County on October 1, 1969, and that he was the official custodian of the court records. Upon being shown State's Exhibit No. 1, he identified it as the judgment and sentence on a plea of guilty out of Washington County styled *The State of Oklahoma versus John Gordon Reddell,* Case No. CR69–208. He further stated the judgment and sentence was final, and that it reflected that the defendant was represented by counsel in said case.

Carl Holly's testimony was that he was Deputy Sheriff of Washington County and that he was acquainted with the defendant. Upon being shown State's Exhibit No. 1, he testified that it was a judgment and sentence against one John Gordon Reddell who was one and the same as the John

Gordon Reddell he identified in court as the defendant in the instant case.

■ The defendant's first and third assignments of error will be considered together because both have commonality in subject. The defendant's first assignment of error asserts that the prosecutrix' testimony cannot stand alone because it is incredible, improbable and inconsistent. The defendant further asserts in his third assignment of error that the defects in the prosecutrix' testimony were not cured with sufficient corroboration inasmuch as the attempted corroboration did not prove the crime charged, nor did it tend to connect the defendant with the crime. The defendant notes the principle of law enunciated by this Court in *Abels v. State,* Okl.Cr., 331 P.2d 954 (1958), wherein it states:

"[T]his court has long recognized that rape cases have a unique character above and beyond that of any other type cases. . . . Ordinarily, this court is not to judge the weight of the evidence and we proclaim it to be the exclusive right of the jury, and where there is any competent evidence to support the verdict of the jury, or where the evidence is conflicting, the court will not examine the record for the purpose of ascertaining or determining the weight of such evidence and the verdict approved by the trial judge will be permitted to stand. But, on cases of this character, an exception to the general rule is recognized, and that exception is that in rape cases the appellate court will make a careful examination of the whole record to the end that it may justify the sentence imposed. . . ." (at page 961)

In *Abels,* supra, this Court cited *Maxwell v. State,* 78 Okl.Cr. 328, 148 P.2d 214 (1944), as follows:

" '[T]he testimony of the prosecutrix in a rape case must be clear and convincing, and where it bears upon its face inherent evidence of improbability, is contradictory, inconsistent or unreasonable, it will be held as insufficient, and under

these circumstances must be corroborated to the extent of making it sufficient.' "

We again observe the prosecutrix testified that the defendant entered her trailer when she was dressing one evening, pushed her onto the couch, locked the trailer door, choked her, pushed her into the back bedroom and threatened to kill her if she did not take off her clothes. She testified that she refused and the defendant again threatened to kill her, and the prosecutrix, being afraid, took off her clothes and he placed her on the bed and then committed the act of sexual intercourse with her. We note the prosecutrix' testimony at trial was substantially the same as that given at the preliminary hearing. After examining the entire record, we feel the testimony of the prosecutrix in the instant case is clear and convincing and, thus, the testimony of the prosecutrix was sufficient competent evidence to prove the crime of which the defendant was charged. See, *Abels*, supra.

In so holding we find there were no defects in the testimony of the prosecutrix which would necessitate corroboration, and as such we therefore find the defendant's first and third assignments of error to be without merit.

The defendant's second assignment of error asserts that the testimony of the prosecutrix was characterized by improbability, inconsistency, uncertainty, incredibility and hidden motives, and thus it was error of the trial court to refuse to give a cautionary instruction to the jury. A similar contention is made in defendant's fourth assignment of error wherein he asserts that since the testimony of the prosecutrix was insufficient and required corroboration, it was error for the trial court to refuse to give defining instructions to the jury.

We have examined the defendant's submitted instructions which were refused by the trial court and we feel that the instructions submitted to the jury considered as a whole fairly and correctly state the applicable law. See, *Turman v. State,* Okl.Cr., 522 P.2d 247 (1974).

The defendant's fifth assignment of error asserts that the evidence was insufficient to support a verdict of guilty. We do agree with the principle of law urged by the defendant which asserts that rape cases have a unique character above and beyond other types of cases which dictate that the appellate court will make a careful examination of the entire record to the end that it may justify the sentence imposed. See *Abels*, supra. However, we again note the prosecutrix' testimony was clear and convincing that the defendant entered her trailer, threatened to kill her if she did not remove her clothes, and that thereafter the defendant consummated the act of sexual intercourse with the prosecutrix without her consent. The entire record reveals sufficient competent evidence from which the jury properly concluded that the defendant was guilty as charged. See, *Abels*, supra, and *Jones v. State,* Okl.Cr., 527 P.2d 169 (1974). For the reasons herein stated, we find the defendant's fifth assignment of error to be without merit.

Defendant's sixth assignment of error asserts that the State failed to prove the prior conviction charged on the second page of the Information because all of its evidence was incompetent and thus insufficient. The defendant urges the judgment and sentence introduced into the evidence to prove the prior conviction failed to reflect the specific rights of which the defendant was advised, specifically whether or not he was informed of the minimum or maximum punishment provided for the crime charged. He further urges the judgment and sentence also fails to reflect any affirmative waiver by the defendant, citing *Copenhaver v. State,* Okl.Cr., 431 P.2d 669 (1967); *Smith v. Oklahoma City,* Okl.Cr., 513 P.2d 1327 (1973), and, *Cobbler v. State,* Okl.Cr., 521 P.2d 838 (1974).

The State urges that the guidelines set forth in *Copenhaver,* supra, were merely suggested guidelines for the trial court and were not mandated by this Court until its

decision in *Smith,* supra, in 1973. The State further urges that in all other cases dealing with the use of a previous conviction to enhance punishment this Court has urged the requirement that the judgment and sentence show representation by counsel, see *Maghe v. State,* Okl.Cr., 507 P.2d 950 (1973), and also see, *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967).

■ We agree that the guidelines set forth in *Copenhaver,* supra, were not mandated by this Court until *Smith,* supra, in 1973. Yet, the judgment and sentence introduced in the instant case to enhance punishment clearly reflects the defendant, in open court and in the presence of his attorney, James E. Connister, and having been duly informed of the nature of crime charged and having been fully advised of his rights and the effect of such a plea, entered a plea of guilty to the offense of rape in the first degree. We do not find the judgment and sentence used in the instant case to enhance punishment reflects any constitutional infirmity. For the reason herein stated, we find the defendant's sixth assignment of error to be without merit.

The defendant's final assignment of error asserts the trial court erred in denying the defendant's waiver of right to have the jury set the punishment in the second stage.

In the instant case, prior to commencement of the second stage of proceedings, the defendant's counsel came upon motion before the court and objected to each and every instruction of the court and to the form of the verdict upon the ground the defendant desired to waive the jury's assessment of punishment in the case.[1] The record further reflects the trial court proceeded to instruct the jury according to the range of punishment provided by law applicable to the instant case whereupon after the second stage of the proceedings was had and the jury retired to deliberate, and thereafter returned with a verdict of guilty on the second page of the Information and assessed punishment at a term of eighteen (18) years' imprisonment. The defendant urges that the right to have the jury assess punishment is a right which may be waived, citing *Tanner v. State,* Okl.Cr., 381 P.2d 888 (1963). And thus, it was error for the trial court to direct the jury to assess the punishment. The defendant further urges this reasoning is supported by this Court's holding in *State v. McDonald,* 10 Okl.Cr. 413, 137 P. 362 (1914), wherein this Court said:

" . . . It is true that where a defendant requests it, the question of punishment must be submitted to the jury, but where no such request is made by the defendant, or where the jury do not assess the punishment, this is a question for the court alone. . . ."

---

1. The following colloquy occurred between the court and the defendant prior to the commencement of the second stage of proceedings wherein the record reflects:

"MR. JONES: Comes now the defendant and objects to each and every Instruction offered by the Court and further objects to the form of verdicts on the ground that the defendant waives and does not request the jury to set punishment in this case, but only to determine the guilt or innocence on the second sheet of the Information. Let the record further show that the defendant has stipulated that the testimony of the witnesses called for page 2 of the Information, to-wit: Holly and Mikel, that their testimony, if they were here physically to testify, would be the same as that given at the preliminary hearing, and the defendant does not object to the reading of the testimony at the preliminary hearing, and the defendant waives identification and authenticity of the transcript of preliminary hearing, without admitting to its relevance or materiality. Could I also ask that the opening statements and closing statements of the second portion be taken down?.

"THE COURT: In view of the record you just made, there are some matters here which I did not realize. Do I understand you correctly, you are waiving jury for the second phase?

"MR. JONES: No, I don't want the jury to set the punishment for the second page. I think the way the statute is, we don't request it." (Tr. 82)

We first note that this Court's holding in *State v. McDonald*, supra, involved a factual situation wherein a defendant entered a plea of guilty and we feel that such a situation is clearly distinguishable from the instant case wherein the cause was tried by jury and that holding is limited to such a fact situation.

In Oklahoma, 22 O.S.1971, § 860, provides:

"In all cases in which the defendant is prosecuted for a second or subsequent offense, except in those cases in which former conviction is an element of the offense, the procedure shall be as follows:

(a) The trial shall proceed initially as though the offense charged was the first offense; when the indictment or information is read all reference to prior offenses shall be omitted; during the trial of the case no reference shall be made nor evidence received of prior offenses except as permitted by the rules of evidence; the judge shall instruct the jury only on the offense charged; the jury shall be further instructed to determine only the guilt or innocence on the offense charged, and that punishment at this time shall not be determined by the jury.

(b) If the verdict be guilty of the offense charged, that portion of the indictment or information relating to prior offenses shall be read to the jury and evidence of prior offenses shall be received. The court shall then instruct the jury on the law relating to the second and subsequent offenses, and the jury shall then retire to determine (1) the fact of former conviction, and (2) the punishment, *as in other cases.*" (Emphasis added)

We also refer to applicable statutory law regarding other cases wherein 22 O.S.1971, § 926 provides:

"In all cases of a verdict of conviction for any offense against any of the laws of the State of Oklahoma, the jury may, and shall upon the request of the defendant assess and declare the punishment in their verdict within the limitations fixed by law, and the court shall render a judgment according to such verdict, except as hereinafter provided."

And 22 O.S.1971, § 927 provides:

"Where the jury find a verdict of guilty, and fail to agree on the punishment to be inflicted, or do not declare such punishment by their verdict, the court shall assess and declare the punishment and render the judgment accordingly."

And, 22 O.S.1971, § 928 provides:

"If the jury assess a punishment, whether of imprisonment or fine, greater than the highest limit declared by law for the offense of which they convict the defendant, the court shall disregard the excess and pronounce sentence and render judgment according to the highest limit prescribed by law in the particular case."

After careful examination of the cases of this Court regarding the province of the court and jury to assess punishment in criminal cases we feel a clarification of the law on this matter is necessary. We observe the general rule of law was that prior to statehood the jury's assessment of punishment was not binding upon the court. See, *Baker v. State*, 3 Okl.Cr. 265, 105 P. 379 (1909). We further observe the decisions of this Court following the general rule enunciated in *Chandler v. State*, 3 Okl.Cr. 254, 105 P. 375 (1909), wherein this Court held construing § 2028, Com.Laws Okl.1909 [2] that under this section this Court should not have directed the jury to assess the punishment unless the defendant requested it. The Court went on to inquire whether or not the trial court's actions prejudiced the rights of the defendant. Thus, the rule of law was enunciated that absent request of defendant it was improper for the trial court to direct the jury to assess punishment, but that this Court would not reverse any case for that reason if the punishment

---

2.  Section 2028, Comp.Laws Okl.1909, is identical in language to 22 O.S.1971, § 926, supra.

assessed was not excessive and where the defendant failed to show any prejudice was incurred. Also see, *Tudor v. State,* 14 Okl.Cr. 67, 167 P. 341 (1917); *McClure v. State,* 42 Okl.Cr. 302, 275 P. 1073 (1929); *Waters v. State,* 46 Okl.Cr. 204, 287 P. 759 (1930); *Leasure v. State,* 48 Okl.Cr. 307, 290 P. 931 (1930), and *Stuart v. State,* Okl.Cr., 522 P.2d 288 (1974).

However, we note the holding of this Court in *Rambo v. State,* 13 Okl.Cr. 119, 162 P. 449 (1917), wherein this Court, in referring to *Chandler,* supra, and construing the same statutory provision regarding assessment of punishment, said:

"And it will be noticed that, as stated in *Chandler v. State,* 3 Okl.Cr. 254, 105 P. 375, 107 P. 735:

" 'Under this section the jury has the right to fix the punishment, whether the court so directs or not. They must fix the punishment if the defendant requests it. If the court had not so instructed the jury, they could have, and might have, fixed the punishment.'

"Hence, under this state of facts, we fail to see how the defendant would be prejudiced by the court informing the jury as to what the penalty fixed by the law is; for under the statute neither the court nor the defendant can arbitrarily take that phase of the case from the jury. They have the right to pass upon it, if they see fit, and, that being true, the defendant is not prejudiced, we think, by the court telling the jury plainly what the law is on that phase of the case, which they have a right to pass upon, if they see fit, even without the request of the defendant. The distinction is that in *all* cases of conviction the jury *may* assess the punishment, but, if the defendant request it, they *must* assess the punishment, or say by their verdict that they are unable to agree upon the punishment. *Oelke v. State,* 10 Okl.Cr. 49, 133 P. 1140." (Emphasis original)

We also note this Court's holding in *Dew v. State,* 8 Okl.Cr. 55, 126 P. 592 (1912),

where again construing § 2028 of the penal code, stated:

"Under the first section, in all cases of a verdict of conviction, the jury has the right to assess and declare the punishment in their verdict, and upon the request of the defendant the jury must assess and declare the punishment, unless they fail to agree on the punishment to be inflicted; and if they find the defendant guilty, and fail to agree on the punishment, or to declare it in their verdict, or assess a punishment greater than the highest limit declared by law for the offense of which they convict, then, and then only can the court assess and declare the punishment as provided by section 2029 and section 2030.

"These sections delimitate the respective provinces of the court and jury as to assessment of punishment in criminal cases. To the constitutional right of a speedy and public trial by an impartial jury of the county in which the crime shall have been committed the statute gives the supplemental right to have the jury assess the punishment, where the defendant demands it. . . ."

We do not agree with the defendant's contention that a defendant may waive his right to have the jury assess punishment. Such reasoning is fallaciously premised on the view that the defendant has a right to have the trial court assess the punishment. We do not feel that the corollary of a statutory right is necessarily valid. See, *Adams v. United States,* 317 U.S. 269 at 279–280, 63 S.Ct. 236, 87 L.Ed. 268 (1942).

We agree with the reasoning in *Rambo,* supra, in that "we fail to see how the defendant would be prejudiced by the court informing the jury as to what the penalty fixed by the law is," even in the absence of a request by the defendant for the jury to assess punishment or, as in the instant case, where the defendant specifically asserts he desires the trial court to assess punishment. As the statute provides, the jury "may" and we feel the stat-

**582**

utory intent is to give the jury an opportunity to pass upon the issue of punishment whether or not so requested; and if the jury find the defendant guilty and fail to agree on the punishment, or assess a punishment greater than the highest limit declared by law for the offense for which the defendant is convicted, *then and only* then can the trial court assess and declare a punishment as provided in 22 O.S.1971, § 927, and § 928. The cases heretofore cited and all other like holdings which are supportive of the defendant's position are overruled insofar as those holdings are inconsistent with the views expressed today.

Thus, for the reasons herein stated, we find it was not error for the trial court to deny the defendant's request to have the trial court set the punishment in the second stage of the proceeding, and for this reason we find the defendant's final assignment of error to be without merit.

In conclusion we observe, after careful consideration of the defendant's contentions herein asserted, there is no error which would justify modification or reversal. The judgment and sentence appealed from is, accordingly, affirmed.

BRETT, P. J., and BUSSEY, J., concur.