FOREMAN AND DEAL *v.* STATE.

4136            132 S. W. 2d 13

Opinion delivered October 9, 1939.

*C. T. Sims,* for appellant.

*Jack Holt,* Attorney General, and *Jno. P. Streepey,* Asst. Atty. General, for appellee.

GRIFFIN SMITH, C. J.  Charles Foreman and Homer Deal have appealed from convictions based upon evidence that they stole a hog from Albert Taylor.  Twenty-nine errors are assigned.  Only the ninth will be discussed— that the court erred in allowing the prosecuting attorney, over objections of the defendants, to ask Sheriff W. C. Cruce if actions and conduct of the defendants did not lead the witness to believe they were guilty.

On cross-examination the officer was questioned by C. T. Sims, counsel for the defendants, relative to the conduct of the defendant Deal after Deal knew that he was suspected.  The prosecuting witness (Albert Taylor) had testified that he found his hog in the defendant Foreman's barn.  Foreman and Deal are brothers-in-law.  Thereafter, Sheriff Cruce was told by Taylor that the hog was in Deal's barn.[1]  Cruce went to the barn and was told by Foreman that a black boar then in the barn belonged to Deal, and that Deal got it from Claude Wolf.  Deal testified he got the hog from Curtis Funderburg, in

---

[1] It was for the jury to determine, in the light of all the evidence, whether Taylor was mistaken in thinking the barn in which he saw the hog was that of Foreman.

Bradley county. Funderburg supported Deal's statement. Shortly after Taylor inspected the hog in the Foreman barn, it disappeared, and was not thereafter seen.

During the cross-examination of Sheriff Cruce it was brought out that the officer had asked Deal to come to his office for questioning. The interview was delayed on account of the illness and subsequent death of Deal's daughter. Cruce testified that after the child's condition became acute he did not expect Deal to come at once. The officer further testified that after the first conversation he had with Deal, the latter did not make any effort to avoid him.

Up to this point cross-examination of Cruce was directed in part to matters relating to the conduct of Deal. Counsel for appellants then asked the officer if he found Funderburg and Deal together in Warren, to which there was an affirmative reply. Cruce stated that he had no way of knowing what the two were talking about. Following are some of the questions and answers as shown by the trial transcript:

"Q. There wasn't anything of your own knowledge that would cause you to draw the conclusion that the discussion was on hogs, was there? A. Nothing—except under the circumstances.

"Q. A mere conjecture in your mind? A. A kind of conclusion arrived at from past experiences and facts.

"Q. What we call, under the rules of evidence, an improper conclusion of a witness? A. It might be."

On redirect examination, conducted by the prosecuting attorney, there is the following:

"Q. Mr. Sims [counsel for the defendants] just said, '. . . by your past experience.' What past experience have you had in investigating this kind of a case? A. I have investigated a number of them.

"Q. Did the defendants' [actions] and conduct lead you to believe that they were guilty? (Objections overruled and exceptions saved.) A. Yes."

It is urged by the state that the sheriff testified as an expert, and therefore the rule against opinion evidence does not apply. On behalf of the Attorney General it is said: "Certainly if a man can become an expert as to the operation of an automobile by working with it so as to be allowed to testify as an expert witness on the speed of it, a sheriff of a county, who makes many criminal investigations, would be an expert in matters of criminology, and should be allowed to testify as an expert."

While it is true that the modern conception of the admissibility of evidence is that it is more important to get the truth than to quibble over impractical distinctions between facts and conclusons,[2] and there are limitations to the rule which excludes opinion testimony, none of the exceptions goes to the extent of permitting an arresting officer to testify that the conduct of a defendant caused him to believe that the defendant was guilty.

Expert witnesses who have skill, learning, or experience in a particular science, art, or trade (and criminology is not to be excluded from the sciences), may give an opinion in a proper case upon a given state of facts relating thereto. It has also been found necessary to admit a class of evidence from nonexpert witnesses, which is usually spoken of as "opinion evidence," where the facts as they appear to the witness cannot clearly and adequately be reproduced, described, and detailed to the jury.[3]

The record in the instant case is sufficient to show that Sheriff Cruce is a most efficient and capable officer, with considerable experience in dealing with criminal matters; and, while his answer to the objectionable question is unquestionably his honest conclusion, it is, nevertheless, a conclusion, and it is predicated upon facts and circumstances which are not shown to stem from scientific investigation, the nature of which could not be adequately explained to the jury. For example, had the of-

---

[2] *First National Bank* v. *Robinson,* 93 Kan. 464, 144 P. 1019, Ann. Cas. 1916D, 286.

[3] American Jurisprudence, v. 20, p. 640, § 769.

ficer been called upon, in the light of his experience with firearms and his knowledge of chemistry, to testify whether, in his opinion, discolorations were caused by powder-burns or by blood-stains, there could have been no tenable objection, provided the proper foundation had been laid; and he might testify that in his opinion a certain wound was caused by a bullet, or a knife, or other instrumentality. But he would not be permitted to testify to the facts and state his conclusions, and then give an opinion as to the guilt or innocence of a defendant. That determination is for the jury.

At page 643 of 20 American Jurisprudence, § 771, there is an excellent text entitled "Conclusions Distinguished from Facts—Composite Facts." There it is said: "The general rule excluding opinions of witnesses is simple in its statement, but not so simple in application, for it is not always easy to distinguish in the testimony of a witness facts within his knowledge or observations from his opinion on facts. As a general rule a witness may testify to a composite fact, although in a sense his testimony may include his conclusion from other facts. In the multitudinous affairs of everyday life, it is extremely difficult to distinguish between 'opinion' on the one hand, and 'fact' or 'knowledge' on the other. Moreover, objections that proposed testimony states a conclusion are sometimes pushed to captious extremes.

"The true solution seems to be that such questions are left for the practical discretion of the trial court. Often the simplest and most satisfactory method is to permit a witness to state a fact as he knows it and leave the ground of his belief to be developed by cross-examination. In such cases it is within the administrative discretion of the court to require the witness's observations and particulars of examination to be more fully set forth or to allow his testimony to stand, leaving the parties to examine and cross-examine him with respect to the same." [4]

---

[4] The section of American Jurisprudence quoted from continues with the following: "What a person would do under a given state of facts which call upon him or her to perform a duty to some other

It is next insisted on behalf of the Attorney General that ". . . if the question was erroneous, which we do not concede, it was invited error, as the court can see by checking the concluding part of the cross-examination of the attorney for appellants on page 50 of the transcript."

It will be seen that in the first conversation referred to the sheriff was asked if he knew what Deal and Funderburg were talking about. In the second instance, the sheriff was required to say whether he thought Deal and Foreman were guilty.

For the error in admitting the opinion testimony of Sheriff Cruce, the judgments are reversed. The causes are remanded with directions to retry.

---

person has been held to be a fact to which such person can testify, and not merely a matter of opinion. A witness may be permitted to state whether he made a certain sale or agreement, whether he held a certain office, whether one is charged with certain duties, whether it was necessary for him to go in between an engine and a car in a particular case, or whether a certain man and woman lived together as man and wife, and that he held her out as his wife, although it has been held that whether the witness married a certain person involved a conclusion where only a common-law marriage was claimed. Similarly, it is held that a witness may testify directly as to whether he is wholly dependent on a certain person for support, but not as to whether a man furnished his family with a suitable place in which to live; whether a vehicle was being used in connection with his business; whether one did or did not sell a person goods at a certain time; whether he would have forwarded a message if it had been delivered to him; whether a homicide was committed without any cause; whether an automobile, when struck by one car, was headed right into another car; whether a certain object near the highway was likely to frighten horses; how a red flag is regarded by law-abiding citizens in the community; whether a photograph of a locomotive shows a pin lifter rod to be inclosed in a pipe; whether goods could not have been delivered without the witness seeing them; or what extent, by percentage, an elevator was used by passengers. It is a misuse of language, however, to call such testimony mere opinion testimony. It is more probably a conclusion drawn from alleged facts, which is admissible under what is sometimes called the 'collective facts rule.' If a witness was in a position to observe, he may be able to state that another person who was present saw stated conditions or occurrences which were visible and open to ordinary observation. His statement is one of a collective fact which the witness may well know with certainty and which is in accordance with common, every day experience."